J-A16015-16

2016 PA Super 186

JULU DIXON, AS TRUSTEE FOR THE
TRUST CONTAINING NORTHWESTERN
LIFE INSURANCE POLICY 15-519-623,

Appellant

v.

NORTHWESTERN MUTUAL, A MUTUAL
LIFE INSURANCE COMPANY AND PETER
LEONE, JR., A SENIOR AGENT OF
NORTHWESTERN MUTUAL,

Appellees

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1154 WDA 2015

Appeal from the Order of December 19, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-13-000459

BEFORE:  FORD ELLIOTT, P.J.E., OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:                                    **FILED AUGUST 25, 2016**

Julu Dixon ("Dixon"), as trustee for the trust containing a Northwestern Life Insurance policy, appeals from the December 19, 2013 order[1] sustaining preliminary objections filed by Peter Leone, Jr. ("Leone") and sustaining in part preliminary objections filed by Northwestern Mutual ("Northwestern").  After careful consideration, we affirm in part, vacate in part, and remand for further proceedings consistent with this Opinion.

The trial court summarized the relevant factual background as follows:

_____

[1] The December 19, 2013 order became final on July 13, 2015, when Dixon discontinued her breach of contract claim against Northwestern Mutual.

*Retired Senior Judge assigned to the Superior Court.

In November 2000, [Michael and Louise Malakoff [(collectively "the Malakoffs")] entered into a written insurance contract with Northwestern. [A trust was named beneficiary of the policy and Dixon] was named as trustee. . . .

Under the contract, premium payments were to be made annually beginning on November 20, 2000. The policy provided for a [$4,000,000.00] second to die benefit. It had an annual premium of $72,164[.00].

In discussions prior to the Malakoffs' purchase of the policy and in discussions after its purchase, [Leone, an insurance agent for Northwestern,] agreed to meet annually with the Malakoffs in order that the annual premiums could be adjusted at the end of each policy year so that the policy would reach its vanishing premium[2] by 2012.

In 2003, Louise Malakoff wrote a letter to [Leone] stating that she was endorsing a check in the amount of $81,164[.00] (rather than the stated annual premium of $72,164[.00]) in order to remain current on the [12]-year schedule of premiums.

In November 2004, [Leone] sent a letter advising the Malakoffs that a payment of $84,164[.00] would keep [them] on track for their [12]-year schedule.

In December 2005, [Leone] advised the Malakoffs that [a] payment of $90,164[.00] was required to remain current on the [12]-year schedule. The Malakoffs continued to make an annual payment of $90,164[.00] through November 2012.

Between December 2005 and October 2009, the Malakoffs had no contact with [Leone]. In October 2009, the Malakoffs contacted [Leone] and were informed that payments of

_____

[2] **See Drelles v. Mfrs. Life Ins. Co.**, 881 A.2d 822, 828 (Pa. Super. 2005) (Explaining vanishing premium policies as alternatives to traditional whole life insurance plans offered by the industry in response to rising interest rates of the 1970s and early 1980s; under the plans policyholders pay higher premiums in earlier years to accelerate growth in the cash value of the policy in exchange for a "vanishing" premium in later years.).

$217,617[.00] in 2010, 2011, and 2012 would be required in order for the policy to be fully paid in year [12] of the policy. Alternatively, they could make a lump sum payment of $550,000[.00].

Through a January 7, 2010 letter, Northwestern advised the Malakoffs that they would have a fully paid policy in 2012 if they made additional annual payments of $90,164[.00] through 2012 and took a reduced death benefit of $2,243,384[.00].

Trial Court Opinion, 12/19/2013, at 1-2.

On January 4, 2013, Dixon filed the instant action against Northwestern and Leone. Dixon's complaint raised claims of breach of fiduciary duty, breach of contract, bad faith insurance, and violating the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201–1 *et seq.*, against both Northwestern and Leone. In March 2013, Northwestern and Leone filed preliminary objections in the nature of a demurrer. On December 19, 2013, the trial court sustained the preliminary objections as to all counts, except Dixon's breach of contract claim against Northwestern. On July 13, 2015, Dixon voluntarily discontinued the breach of contract claim against Northwestern. This timely appeal followed.[3]

Dixon presents three issues for our review:

1. Did the [trial] court err when it held that neither Northwestern nor [] Leone violated their fiduciary duties to perform under their written commitments?

_____

[3] The trial court did not order a concise statement of errors complained of on appeal; however, the trial court explained its rationale for sustaining the preliminary objections in an opinion filed December 19, 2013.

2. Did the [trial] court err when it held that neither Northwestern nor [] Leone violated the [UTPCPL]?

3. Did the [trial] court err when it failed to follow recent appellate case law under the UTPCPL regulating insurance?

Dixon's Brief at 2.[4]

When reviewing an order sustaining preliminary objections, our standard of review is *de novo* and our scope of review is plenary. **Huss v. Weaver**, 134 A.3d 449, 453 (Pa. Super. 2016) (citation omitted). "On an appeal from an order sustaining preliminary objections, we accept as true all well-pleaded material facts set forth in the [plaintiff's] complaint and all reasonable inferences which may be drawn from those facts." **Estate of Gentry v. Diamond Rock Hill Realty, LLC**, 111 A.3d 194, 198 (Pa. Super. 2015) (internal alteration and citation omitted). "Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." **Feingold v. Hendrzak**, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

In her first issue, Dixon argues that Northwestern and Leone owed a fiduciary duty to the Malakoffs. Prior to addressing the merits of this claim, we must address Northwestern's assertion that Dixon waived this issue. **See Madrid v. Alpine Mountain Corp.**, 24 A.3d 380, 382 (Pa. Super.

---

[4] We have re-numbered the issues for ease of disposition.

- 4 -

2011), *appeal denied*, 40 A.3d 1237 (Pa. 2012) (citation omitted). Northwestern argues that Dixon waived the issue by failing to argue before the trial court in response to the preliminary objections that claims alleging a breach of fiduciary duty can co-exist as a matter of law with claims asserting breach of contract. This argument is without merit. Although under Pennsylvania Rule of Appellate Procedure 302(a) issues not raised below are waived, our Supreme Court has held that "[t]here is no requirement in the Rules of Civil Procedure that the non-moving party respond to a preliminary objection, nor must that party defend claims asserted in the complaint. Failure to respond does not sustain the moving party's objections by default, nor does it waive or abandon the claim." ***Uniontown Newspapers, Inc. v. Roberts***, 839 A.2d 185, 190 (Pa. 2003). Instead, as long as a plaintiff asserts in a complaint a cause of action, the plaintiff may assert any legal basis on appeal why sustaining preliminary objections in the nature of a demurrer was improper. ***See Cardenas v. Schober***, 783 A.2d 317, 325 (Pa. Super. 2001), *appeal withdrawn*, 51 MAP 2002 (Pa. Sep. 23, 2002). In this case, Dixon pled a breach of fiduciary duty claim against both Leone and Northwestern. Accordingly, she did not waive her breach of fiduciary duty claim by failing to argue before the trial court that such a claim can proceed, as a matter of law, with a claim alleging breach of contract.

Second, Northwestern argues that Dixon waived her breach of fiduciary duty claim because she failed to identify in her appellate brief the

place in the record that she preserved the issue. *See* Pa.R.A.P. 2101, 2117(c), 2119(e). In her brief, however, Dixon set forth the allegations in her complaint that she avers supported her claim for breach of fiduciary duty. As noted above, the complaint itself is sufficient to preserve an issue challenging an order sustaining preliminary objections in the nature of a demurrer. Accordingly, we conclude that Dixon's failure to provide a separate briefing statement setting forth the location where she preserved her claim does not hinder our review of the claim, and we decline to find this issue waived under Rules 2101, 2117(c), and 2119(e). *See Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 584 (Pa. Super. 2014) (Waiver is appropriate when "deficiencies in a brief hinder our ability to conduct meaningful appellate review[.]").

Third, Northwestern contends that Dixon waived her breach of fiduciary duty claim by not identifying this issue in the statement of issues to be raised on appeal in the docketing statement filed with this Court. To our knowledge, no reported case in this Commonwealth has considered whether failure to identify an issue in a docketing statement waives that issue.[5] As

---

[5] In *AmeriChoice Fed. Credit Union v. Ross*, 135 A.3d 1018 (Pa. Super. 2015), this Court mentioned the appellants' failure to include an issue in their docketing statement. This Court, however, declined to address whether quashal of the appeal (or waiver of the omitted issues) was appropriate because the appeal was decided on the basis of an issue that was included within the appellants' docketing statement. *See id.* at 1023.

this argument requires us to interpret a rule of appellate procedure, we employ the same principles used to interpret statutes. **See** Pa.R.A.P. 107.

When interpreting a rule of appellate procedure, our goal is to ascertain the intent of the Court that promulgated the rule.[6] **See Commonwealth v. Baker**, 690 A.2d 164, 167 (Pa. 1997). "[T]he best indication of said intent is the plain language of a rule." **Commonwealth v. Williams**, 125 A.3d 425, 428 (Pa. Super. 2015) (internal alterations and citation omitted). When the plain language of a rule is ambiguous, we may consider, *inter alia*, the object to be attained when ascertaining this Court's intent. **See** 1 Pa.C.S.A. § 1921(c)(4).

We begin with a review of the plain language of Pennsylvania Rule of Appellate Procedure 3517, which provides that:

> Whenever a notice of appeal to the Superior Court is filed, the Prothonotary shall send a docketing statement form which shall be completed and returned within ten [] days in order that the Court shall be able to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal. Failure to file a docketing statement may result in dismissal of the appeal.

Pa.R.A.P. 3517. The current form in civil actions asks appellants to list, *inter alia*, "[i]ssues to be raised on appeal[.]" Administrative Office of Pennsylvania Courts Form 3020, at 2. In this case, the only issue raised by

---

[6] Pursuant to Pennsylvania Rules of Appellate Procedure 104 and 3501, this Court promulgated Rule 3517 effective January 1, 1983, 13 Pa.B 8 (Jan. 3, 1983), and amended it effective September 4, 2001. 31 Pa.B 3518 (July 7, 2001).

Dixon in her docketing statement filed with this Court was whether "the [trial] court err[ed] when it held that neither Northwestern nor [] Leone violated the [UTPCPL]?" Dixon's Docketing Statement, 8/10/15, at 2. Northwestern argues that Dixon's failure to list the breach of fiduciary duty claim in this section of the docketing statement waives that issue for purposes of appellate review.

Rule 3517 does not set forth any consequences for failing to list an issue in a docketing statement. Instead, the only remedy specified in Rule 3517 is that an appeal may be dismissed for a complete failure to file a docketing statement. Thus, we conclude that the plain language of Rule 3517 is ambiguous and turn to other tools of interpretation to glean this Court's intent.

The object to be achieved in requiring a docketing statement is "to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal." Pa.R.A.P. 3517. Although the rule itself does not set forth how the inclusion of issues in the docketing statement furthers this objective, our internal operating procedures provide guidance. Specifically, our internal operating procedures provide that the issues to be raised on appeal are included in the docketing statement

> to determine whether the issues to be raised are immediately reviewable and have been properly preserved, whether the issues to be raised are significant and relevant to issues raised in other cases then pending before the Court, and whether the issue(s) should be directed to the [C]ourt *en banc* in the first instance.

Superior Court Internal Operating Procedure 211(B) (unpublished).

In other words, the issues to be raised are included in the docketing statement for two main reasons. First, the docketing statement is used to determine whether an issue raised is immediately appealable and properly preserved. Although this allows for efficiency in that improper appeals may be quashed or dismissed earlier in the process, there is nothing that prevents this Court from finding a particular issue is not properly preserved or reviewable once the issue is set forth in the brief. Second, docketing statements allow this Court to determine if an issue is significant and relevant to issues pending before this Court, and whether immediate *en banc* review is appropriate in light of the issues raised. This objective is not furthered by finding that an issue excluded from a docketing statement is waived; indeed, waiver would seem to frustrate this objective. Again, nothing prevents the three-judge panel which reviews the briefs in a case to *sua sponte* request *en banc* consideration of an issue that is included in a brief and was not included in the docketing statement. **See** Superior Court Internal Operating Procedure 454 (unpublished).

For further guidance, we look to the Commonwealth Court's recent explanation of why listing an issue to be raised in a docketing statement is different than listing an issue to be raised in a concise statement filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Specifically, the Commonwealth Court explained that listing an issue in a concise

statement is meant to "facilitate appellate review" while listing issues in a docketing statement is used only to screen cases for that court's appellate mediation program. **See Greater Pittsburgh Soc. Club v. Pa. Liquor Control Bd.**, 124 A.3d 425, 2015 Pa. Commw. Unpub. LEXIS 733, at *13-14 n.10 (Pa. Cmwlth. 2015) (unpublished memorandum), *appeal denied*, 135 A.3d 587 (Pa. 2016).[7] We find parallels between the Commonwealth Court's use of the issues raised in the docketing statement for appellate mediation screening with this Court's use of issues raised in the docketing statement for *en banc* screening purposes. In both cases, the issues raised in the docketing statements are used to divert appeals from the normal decisional process. They are not used to "facilitate appellate review." **See id.** at *14 n.10. As such, failure to include an issue in a docketing statement should be treated differently than failure to include an issue in a concise statement – which results in waiver of that issue.

Moreover, finding waiver in this situation does not serve the general purposes of waiver. The main goal for our waiver rules is to ensure the efficient operation of the judicial system. The first way this goal is accomplished is by ensuring that the trial courts have an opportunity to rectify any errors before appellate review. **See Ross v. Se. Pa. Transp.**

_____

[7] Unpublished memorandum opinions of the Commonwealth Court issued after January 15, 2008 may be cited for their persuasive value. **See** Pa.R.A.P. 3716(b).

*Auth.*, 714 A.2d 1131, 1133 (Pa. Cmwlth. 1998), *appeal denied*, 736 A.2d 606 (Pa. 1999); *Commonwealth v. Roberts*, 352 A.2d 140, 141 (Pa. Super. 1975). By the time a docketing statement is filed, however, the trial court has lost jurisdiction and cannot fix any alleged errors. *See Commonwealth v. Rathfon*, 705 A.2d 448, 450 (Pa. Super. 1997), *appeal dismissed*, 725 A.2d 1209 (Pa. 1999) (citation omitted) ("It is well-settled that once a notice of appeal has been filed, a trial court is divested of jurisdiction to act further on the case."). The second way that waiver rules ensure the efficient operation of the judicial system is by providing appellate courts with the information necessary to adequately consider an issue. *See Krauss*, 104 A.3d at 584. Failure to include an issue in a docketing statement does not harm the efficient operation of the judicial system and does not hinder our review.

For these reasons, we conclude that this Court's intent in promulgating Rule 3517 was not to add another issue preservation hurdle. Instead, this Court intended to facilitate the internal workings of this Court by permitting screening of appeals by the Court's staff. The express intent of Rule 3517 coupled with the lack of clarity in establishing waiver as a sanction for omission counsel strongly against refusal to undertake appellate review on the ground advanced by Northwestern. *See Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Markets, Inc.*, 52 A.3d 1233, 1247 (Pa. 2012) (internal quotation marks omitted) ("To warrant the heavy

consequence of waiver, in a rules schemata designed to secure the just, speedy and inexpensive determination of disputes, the applicability of the [r]ule should be apparent upon its face or, failing that, in clear decisional law construing the [r]ule."). Thus, we hold that failure to include an issue in a docketing statement does not result in waiver of that issue.[8] As such, we conclude that Dixon's failure to include her breach of fiduciary duty issue in her docketing statement did not waive the issue for appellate review.

Having determined that Dixon preserved her breach of fiduciary duty claim, we proceed to the merits of that issue. The trial court held that Leone and Northwestern did not owe a fiduciary duty to the Malakoffs.[9] Dixon argues this was legal error, as there was a confidential relationship between the parties.

"Typically, the purchase of insurance is considered an arm's-length transaction, in which the insurer incurs no fiduciary duty apart from those that may be defined in the contract for insurance." ***Yenchi v. Ameriprise***

_____

[8] We emphasize, however, that deliberate failure to list an issue in a docketing statement may result in this Court fashioning equitable remedies. For example, an appellant may be ordered to pay the costs of a supplemental reproduced record necessitated by the failure to include an issue in a docketing statement.

[9] Dixon mischaracterizes the trial court's holding. Specifically, she states that the trial court held that a breach of fiduciary duty claim cannot co-exist with a breach of contract claim. Dixon's Brief at 20. In fact, the trial court held the exact opposite, noting that the two claims can co-exist. ***See*** Trial Court Opinion, 12/19/13, at 2-3.

*Financial, Inc.*, 123 A.3d 1071, 1078 (Pa. Super. 2015), *appeal granted*, 134 A.3d 51 (Pa. 2016) (citations omitted).[10]  Similarly, an agent typically does not incur a fiduciary duty by selling a policy to an insured.  **See Commonwealth ex rel. Corbett v. Snyder**, 977 A.2d 28, 46 (Pa. Cmwlth. 2009), *appeal denied*, 999 A.2d 1247 (Pa. 2010) (citation omitted).  In order for a fiduciary duty to exist, the insurer and/or the agent must have a confidential relationship with the insured.  **See Yenchi**, 123 A.3d at 1080.

For most insurance-based interactions, the relationship is one-sided and cannot be regarded as confidential.  **Wisniski v. Brown & Brown Ins. Co.**, 906 A.2d 571, 578-579 (Pa. Super. 2006), *appeal denied*, 920 A.2d 834 (Pa. 2007).  The general test for determining the existence of a confidential relationship is "whether it is clear that the parties did not deal on equal terms."  **Yenchi**, 123 A.3d at 1078, *citing* **Frowen v. Blank**, 425 A.2d 412, 416 (Pa. 1981).  A confidential relationship can be established by showing "over-mastering influence, . . . weakness, dependence[,] or trust, justifiably reposed."  **Yenchi**, 123 A.3d at 1080 (emphasis removed), *citing* **Basile v. H & R Block, Inc.**, 777 A.2d 95, 101 (Pa. Super. 2001).

Here, Dixon analogizes the instant case to **Yenchi**, in which this Court found that a fiduciary duty can exist in the context of an insurance contract.

_____

[10] Our Supreme Court granted allowance of appeal in order to consider, *inter alia*, if there were a factual dispute as to whether a confidential relationship existed between the parties.

*Yenchi*, however, is distinguishable from the case at bar. In *Yenchi*, the plaintiffs pled that they received "independent, financial planning advice" separate from the insurance policy. *Yenchi*, 123 A.3d at 1080. Thus, in *Yenchi*, there was a true factual dispute as to whether the plaintiffs and the defendants undertook a confidential relationship and, therefore, whether the defendants owed the plaintiffs a fiduciary duty. That factual scenario is not common in the standalone sale of an insurance policy where financial planning advice is not offered by the sales agent. *See Yenchi*, 123 A.3d at 1078. Thus, this Court's holding in *Yenchi* is narrow and is not applicable to the facts of this case. *Cf. Commonwealth v. McCann*, 478 A.2d 883, 884 (Pa. Super. 1984) (The holding of a case "must be read in the context of its facts.").

Here, Dixon did not plead that the Malakoffs had any relationship with Northwestern and/or Leone outside of the insurance contract entered into between the Malakoffs and Northwestern. In other words, unlike the situation in *Yenchi*, the Malakoffs failed to plead that Northwestern and/or Leone took on any independent duties outside of the insurance contract. Northwestern and Leone did not exert an over-mastering influence nor did the Malakoffs show weakness, dependence, or trust, justifiably reposed.

Agreeing to adjust premiums and giving the Malakoffs annual premium information related to the insurance contract itself was not exertion of an over-mastering influence. To the extent that Dixon argues that the

Malakoffs' dependence and trust of Northwestern and Leone to adjust premiums evidences a confidential relationship, we reject that argument. To hold otherwise would impose a fiduciary responsibility on every insurance company and every insurance agent in every insurance contract because the insured always relies upon the insurance company and its agents to quote premium levels needed to acquire the desired extent of coverage. Thus, there must be some type of dependence and trust beyond the conveyance of terms of the insurance contract in order for a confidential relationship to exist. Dixon failed to plead that such dependence or trust existed in the present case. Accordingly, Dixon failed to plead sufficient facts supporting her allegation that there was a confidential relationship between the Malakoffs and Northwestern and/or Leone.

In her second and third issues, Dixon argues that the trial court erred in holding that she failed to plead viable UTPCPL claims against Northwestern and Leone. The trial court found that Dixon's claims are barred by the gist of the action doctrine. Dixon argues that her UTPCPL claim is not barred by the gist of the action doctrine, which

> provides that an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.

***Bruno v. Erie Ins. Co.***, 106 A.3d 48, 53 (Pa. 2014) (footnotes omitted).

In order to determine if a claim is barred by the gist of the action doctrine, our Supreme Court set forth the following test:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68 (internal citations omitted).

Dixon's UTPCPL claims center on statements attributed to Northwestern and Leone and included in billing statements sent after December 2006. Specifically, Dixon asserts that the premium charges included within the post-December 2006 billing statements were insufficient to achieve the 12-year vanishing premium goal of the insurance contract. Dixon alleges that these insufficient premium charges constitute actionable misstatements under the UTPCPL. **See** Dixon's Brief at 11; Dixon's Reply Brief at 9.

Recently, in **Telwell, Inc. v. Grandbridge Real Estate Capital LLC**, 2016 Pa. Super. LEXIS 401 (Pa. Super. Jul. 21, 2016),[11] this Court found that the gist of the action doctrine did not bar a similar negligent

---

[11] The trial court did not have the benefit of **Bruno** or **Telwell** when ruling on the preliminary objections that are the subject of this appeal.

misrepresentation claim. *Id.* at *21-22. In that case, Telwell alleged that Grandbridge and the Public School Employees' Retirement System ("PSERS") overcharged interest on a ten-year balloon mortgage note. Telwell obtained the mortgage loan from PSERS, for which Grandbridge served as agent. The note memorialized the terms of the loan and the mortgage secured payment. The note provided that after five years of interest at a fixed rate, the interest would be recalculated. At the conclusion of the five-year period, however, Grandbridge (the mortgage servicer) did not recalculate the interest as set forth in the note. Instead, the interest remained at the fixed rate, 3.65% above the correctly adjusted rate. Grandbridge continued to send billing statements to Telwell which contained the incorrect interest rate and Telwell continued to pay the higher rate. Telwell then brought claims for, *inter alia*, negligent misrepresentation. This Court held that Telwell's negligent misrepresentation claim could proceed based upon the incorrect billing statements sent to Telwell. *Id.* at *21-22.

We find **Telwell** analogous to the case at bar. Telwell alleged negligent misrepresentation based on the billing statements which contained an incorrect interest rate under the note. Here, Dixon's UTPCPL claim rests on the post-2006 billing statements containing unadjusted premium information. **See** Dixon's Brief at 15. In both cases, the defendants agreed to recalculate payments based upon current interest rates. In both cases, the defendants allegedly failed to update the amount due and sent billing

statements based upon calculations using the old billing statements. Thus, we ascertain no legally significant differences between the alleged negligent misrepresentation in **Telwell** and the alleged negligent misrepresentation in this case. Under **Telwell**, the gist of the action doctrine does not bar a negligent misrepresentation claim. Thus, if a negligent misrepresentation can form the basis of a UTPCPL claim, Dixon's claim is not subject to dismissal at the preliminary objection stage.

Under the UTPCPL's catchall provision, "unfair or deceptive acts or practices" can include "engaging in any [] fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. 201-2(4)(xxi). The pre-1996 catchall provision of the UTPCPL prohibited "fraudulent conduct" and required proof of common law fraud for a claim to succeed. **See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC**, 40 A.3d 145, 151 (Pa. Super. 2012). In 1996, the General Assembly revised the catchall provision to broaden the scope of actionable conduct from "fraudulent conduct" to "deceptive conduct." 1996 P.L. 906, 908. The post-1996 catchall provision thus eliminated the requirement of proving fraud to succeed under the UTPCPL. **Bennett**, 40 A.3d at 154. Any deceptive conduct "which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim" under the UTPCPL. **Id.** at 154-155.

Deceptive conduct ordinarily can only take one of two forms, either fraudulent or negligent. As noted above, the pre-1996 catchall provision covered only fraudulently deceptive practices. The broadening of the UTPCPL so as to not require fraud therefore *ipso facto* makes negligent deception, *e.g.*, negligent misrepresentations, actionable under the post-1996 catchall provision. Here, Dixon alleges Northwestern and Leone negligently misrepresented the premium amount by sending incorrect billing statements. Dixon's Brief at 11. As this Court found such claims were not barred by the gist of the action doctrine in **Telwell**, we similarly find that Dixon's claims are not barred by the gist of the action doctrine.

Moreover, Dixon's UTPCPL claim is not barred by the economic loss doctrine. ***See Knight v. Springfield Hyundai***, 81 A.3d 940, 952 (Pa. Super. 2013) (economic loss doctrine does not apply to UTPCPL claims);[12]

_____

[12] This Court's decision in **Knight** is in tension with the United States Court of Appeals for the Third Circuit's holding that the economic loss doctrine applies to UTPCPL claims. ***See Werwinski v. Ford Motor Co.***, 286 F.3d 661, 670-682 (3d Cir. 2002); ***see also Adams v. Copper Beach Townhome Communities, L.P.***, 816 A.2d 301, 305 (Pa. Super. 2003) (citing **Werwinski** with approval). We are, of course, bound by **Knight**. We note with concern, however, that federal courts in this Commonwealth (along with federal courts in Delaware, New Jersey, and the Virgin Islands) are still bound by **Werwinski**. ***See McGuckin v. Allstate Fire & Cas. Ins. Co.***, 118 F.Supp.3d 716, 720 (E.D. Pa. 2015) ("**Werwinski**'s prediction of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise."). This split in authority means that state and federal courts in this Commonwealth
*(Footnote Continued Next Page)*

*see also Toth v. Nw. Sav. Bank*, 31 Pa. D&C 5th 1, 6 (C.C.P. Allegheny 2013) (noting that applying the economic loss doctrine to UTPCPL claims would render the catchall provision virtually meaningless). Accordingly, Dixon's UTPCPL claim is not barred by the economic loss doctrine. The trial court erred in sustaining Leone and Northwestern's preliminary objections as to this claim.[13]

In sum, we hold that failure to include an issue in an appellant's docketing statement does not result in the waiver of that issue. As we also reject Northwestern's other arguments in favor of waiver, we conclude that Dixon properly preserved her issues for appellate review. We conclude that the trial court properly held that Leone and Northwestern did not owe the Malakoffs a fiduciary duty. We conclude, however, that Dixon's UTPCPL claim based on the post-2006 billing statements is not barred by the gist of the action doctrine or the economic loss doctrine. Accordingly, we affirm the trial court's order sustaining Leone's and Northwestern's preliminary

*(Footnote Continued)* ───────────

follow different substantive rules in considering claims advanced under the UTPCPL.

[13] Leone raises a separate argument that only Northwestern is liable for the billing statements; however, Leone's name appears on all billing statements after December 2006. Who sent the billing statements, along with whether the disclaimers printed on those billing statements were sufficient to give the Malakoffs notice that the interest rate assumptions were no longer valid, is a question that is better suited for dispositive motions at later stages of the litigation or trial.

objections as to the fiduciary duty claim and vacate the trial court's order sustaining the preliminary objections as to the UTPCPL claim.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2016