**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2501

_____

JACQUELINE PFENDLER,
on behalf of herself and all others similarly situated,

Appellant

v.

PNC BANK, NATIONAL ASSOCIATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 2-18-cv-00361)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on March 19, 2019

Before:  SHWARTZ, KRAUSE and BIBAS, *Circuit Judges*

(Opinion filed: March 21, 2019)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Jacqueline Pfendler, a homeowner residing in North Carolina, appeals the District Court's dismissal of her consumer protection claims against her mortgage lender with prejudice. Because she has identified nothing in the Deed of Trust that would tend to mislead reasonable homebuyers about PNC's property-inspection practices, we will affirm the District Court's order.

## I.    Background

Jacqueline Pfendler and her husband purchased a home in Littleton, North Carolina, with RBC Bank—now part of PNC Bank—serving as their lender. The Deed of Trust obligated the Pfendlers, "[w]hether or not [they] [were] residing in the Property," to "maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition." App. 69. To ensure the fulfillment of this obligation, the agreement authorized the lender to "make reasonable entries upon and inspections of the Property" and to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property." *Id.* Any amount expended by the lender under this provision would be added to the debt owed under the agreement. Another provision listed "property inspection and valuation fees" as

examples of fees that the lender could charge "for services performed in connection with Borrower's default." App. 71-72.

The Pfendlers defaulted on their loan by failing to make mortgage payments in July and August 2017. As alleged in the complaint, PNC used an automatic computer system to order property inspections based on how long an account had been in default and continued ordering inspections at unspecified intervals until the homeowner became current. After the Pfendlers defaulted, this computer system ordered two $15 "drive-by" property inspections. PNC added these charges to the debt the Pfendlers owed under the mortgage.

Alleging that the Deed of Trust misled homebuyers and that PNC breached the agreement, Jacqueline Pfendler brought claims for breach of contract, unjust enrichment, and unfair or deceptive trade practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) and North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA). The District Court dismissed all of her claims with prejudice, and Pfendler timely appealed.

## II.    Discussion

We review de novo the District Court's dismissal of Pfendler's complaint for failure to state a claim.[1] *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007).

---

[1] We have jurisdiction over Pfendler's appeal under 28 U.S.C. § 1291, and the District Court exercised jurisdiction under 28 U.S.C. § 1332(d).

To withstand a motion to dismiss, a complaint must allege a claim "that is plausible on its face" when accepting all the factual allegations as true and drawing every reasonable inference in favor of the nonmoving party. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 & n.2 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a complaint, however, we disregard conclusory assertions and bare recitations of the elements. *Id.* at 786 n.2.

Pfendler appeals only the dismissal of her consumer protection claims under the UTPCPL and UDTPA. Pennsylvania's UTPCPL proscribes businesses practices that carry the "capacity or tendency to deceive" consumers. *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018). While this statutory prohibition against "unfair or deceptive" business practices requires neither scienter nor actual deception, *id.*; *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 154-55 (Pa. Super. Ct. 2012), a private plaintiff must separately prove reliance and causation, *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). A practice's potential to mislead consumers, though generally considered a factual question, sometimes can be resolved as a matter of law on a motion to dismiss. *Golden Gate*, 194 A.3d at 1024.

In all relevant respects, North Carolina's UDTPA incorporates analogous or stricter requirements. To plead a claim under the UDTPA, a plaintiff must allege that (1) the defendant engaged in unfair or deceptive conduct, (2) that conduct affected

4

commerce, and (3) the plaintiff was proximately harmed as a result. *Azure Dolphin, LLC v. Barton*, 821 S.E.2d 711, 727 (N.C. 2018); *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). Whether a business practice qualifies as "unfair or deceptive" is a legal question for the court to resolve based on the given facts. *Krawiec v. Manly*, 811 S.E.2d 542, 550 (N.C. 2018). Although North Carolina, like Pennsylvania, considers a representation's "tendency to deceive[,]" it requires "egregious or aggravating circumstances" before the UDTPA applies. *Dalton*, 548 S.E.2d at 711 (citations omitted).

Pfendler's consumer protection claims rest entirely on the flawed premise that under the Deed of Trust "[t]he only necessary, reasonable, or appropriate purpose of drive-by inspections [was] to determine whether a home [was] occupied." App. 21 ¶ 3. To the contrary, the agreement expressly provided that PNC could conduct inspections "[w]hether or not [the Pfendlers] [were] residing in the Property" to determine whether they were continuing to maintain it. App. 69. Were there any doubt, another provision explicitly authorized PNC to charge "property inspection and valuation fees" if the Pfendlers defaulted. App. 72. And PNC had a legitimate reason to fear that, once the Pfendlers defaulted on their mortgage, they would likewise fall behind on necessary upkeep.

The district court decisions on which Pfendler relies, if anything, highlight the deficiencies of her complaint. Pfendler does not allege that PNC concealed or marked up the price of its property inspections, *see Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 952

5

(N.D. Cal. 2013) ("marked-up or padded actual fees"); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933, 938 (N.D. Cal. 2013) ("undisclosed mark-ups"), or ran up excessive fees for useless inspections, *see Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1012 (S.D. Iowa 2009) (alleging that lender designed a system "to automatically charge as many property inspection fees as possible" and "no one reviews the results of the property inspections"); *Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940 (KMK), 2017 WL 1216925, at *2-3 (S.D.N.Y. Mar. 30, 2017) (lender allegedly charged a homeowner for fourteen drive-by property inspections, even though plaintiff's residence was "located on the third floor of an apartment building that does not permit public access").  By contrast, Pfendler's bare allegation that PNC ordered two property inspections using a sophisticated computer program does not, without more, plausibly suggest that anything in the Deed of Trust had the tendency to mislead a reasonable homebuyer.[2]  *See Golden Gate*, 194 A.3d at 1023.

## III.    Conclusion

---

[2] Pfendler urges us to certify the question whether the economic-loss doctrine governs her UTPCPL claim to the Pennsylvania Supreme Court.  *Compare Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (applying the economic-loss rule) *with Dixon v. Nw. Mut.*, 146 A.3d 780, 790 n.12 (Pa. Super. Ct. 2016) (noting that the Pennsylvania Superior Court has repeatedly rejected *Werwinski*); *see also Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018) (clarifying that the applicability of the economic-loss doctrine depends on whether the duty at issue "arises independently of any contractual duties between the parties").  We see no need to reach the economic-loss doctrine, much less certify the proposed question to the Pennsylvania Supreme Court, because Pfendler's UTPCPL claim fails regardless.

6

For the aforementioned reasons, we will affirm the District Court's order of dismissal.