**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2109
_____

LISA EARL,
                    Appellant

v.

NVR, INC., trading as HEARTLAND HOMES OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2:20-cv-00505)
District Judge: Honorable Arthur J. Schwab
_____

Argued: January 29, 2021
_____

Before: RESTREPO, BIBAS, and PORTER, *Circuit Judges*

(Filed: March 5, 2021)

Jordan Lee Strassburger [ARGUED]
Strassburger McKenna Gutnick & Gefsky
Four Gateway Center, Suite 2200
444 Liberty Ave.
Pittsburgh, PA 15222

        *Counsel for Appellant*

Russell D. Giancola [ARGUED]
Kathleen A. Gallagher

Porter Wright Morris & Arthur LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

RESTREPO, *Circuit Judge*.

Appellant Lisa Earl challenges the District Court's dismissal of her Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim against Appellee NVR, Inc. ("NVR") in connection to a dispute over the purchase of a home and its condition. Following our holding in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), the District Court determined that Earl's claim was barred by the economic loss doctrine as well as the gist of the action doctrine. Rulings by Pennsylvania appellate courts subsequent to *Werwinski*, however, have cast substantial doubt upon the continuing validity of our prior interpretation of the UTPCPL. We will use this occasion to clarify that *Werwinski* no longer accurately reflects the state of Pennsylvania law with regard to the economic loss doctrine and the UTPCPL, reverse the District Court's dismissal of Earl's claims, and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND[1]

On July 12, 2012, Earl entered into a Standard Agreement of Sale with NVR for the purchase of a property (the "Home") in Allegheny County, Pennsylvania.  **App. 8-9.**  NVR was the seller and builder of the Home.  **App. 9.**  Earl had been attracted to the purchase by NVR's marketing, describing the Home as one which would contain "quality architecture, timeless design, and beautiful finishes."  App. 9.  While the Home was under construction, Earl and agents of NVR had further conversations about the Home in which NVR made representations about the Home's construction, condition, and amenities to Earl.  **App. 9.**  These representations included that the Home would be constructed in a good and workmanlike manner; that NVR would remedy any deficiencies encountered by Earl; and that the Home would be constructed in accordance with relevant building codes and standards.  **App. 9.**  The construction of the Home was completed around March 2013, and Earl closed on the Home at this time.  **App. 9.**

Upon moving into the Home, however, Earl encountered a number of material defects in the Home.  **App. 9.**  Earl relayed these defects to NVR, but NVR's attempts to repair several of the defects were inadequate and in fact exacerbated some of the issues, despite NVR's assurances that the problems were remedied.  **App. 10**.  A number of the promised conditions and amenities that Earl had relied upon had also not been provided.

---

[1] Because we are reviewing the District Court's grant of a motion to dismiss, we must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff.  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

**App. 10.** Earl contends that NVR's failure to provide the promised conditions and amenities of the agreement were knowing and willful. **App. 10**.

Earl subsequently pursued two claims against NVR: 1) violation of the UTPCPL and 2) breach of implied warranty of habitability. **App. 7.** The District Court granted NVR's motion to dismiss with respect to both claims. **App. 16.** Earl only challenges the dismissal of her UTPCPL claim. **Appellant Br. 8-9.**

## II. DISCUSSION[2]

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Cons. Stat. § 201-3. The statute "was created to even the bargaining power between consumers and sellers in commercial transactions," and as such "is to be construed liberally to effectuate that goal." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018).

Pennsylvania courts have previously recognized, however, two related doctrines that may block a plaintiff's otherwise valid cause of action under the UTPCPL: the economic loss doctrine and the gist of the action doctrine. We will discuss each doctrine in turn.

### A. Economic Loss Doctrine

In our decision in *Werwinski*, we described the economic loss doctrine as prohibiting "plaintiffs from recovering in tort economic losses to which their entitlement flows

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1441. We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the District Court's dismissal of a complaint for failure to state a claim under Federal Rule 12(b)(6). *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 219 (3d Cir. 2020).

4

only from a contract." 286 F.3d at 671 (internal quotation mark omitted). We were tasked with deciding whether the economic loss doctrine applied to claims arising under both Pennsylvania common law and statutory law. Without the benefit of a Pennsylvania Supreme Court decision on point, we were required to "predict how the court would rule by giving proper regard to the relevant rulings of other courts of the state." *Id.* at 670 (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990)) (quotations omitted). We noted that an en banc panel of the Pennsylvania Superior Court in *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 134 (Pa. Super. Ct. 1989), had endorsed the doctrine at least as in its application to tort claims. *Werwinski*, 286 F.3d at 671. But given the paucity of Pennsylvania law defining its scope, we were forced to look to courts in multiple other jurisdictions to determine how best to apply it. *Id.* at 675-78.

In doing so, we determined that the economic loss doctrine was to be applied broadly, and that no exception existed even with respect to tort claims based upon intentional fraud. *Id.* at 680-81. Moreover, partly in reliance on decisions from courts in Wisconsin and Connecticut, we decided that the economic loss doctrine could be applied to statutory misrepresentation claims in addition to tort claims. *Id.* at 681; *see Weather Shield Mfg., Inc. v. PPG Indus., Inc.*, No. 97-C-707-S, 1998 WL 469913, at *5 (W.D. Wis. June 11, 1998); *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075, 1088 (Conn. 1998), *overruled by Ulbrich v. Groth*, 78 A.3d 76, 100-02 (Conn. 2013).

The Pennsylvania Supreme Court has still not weighed in directly on the applicability of the economic loss doctrine to the UTPCPL. It has clarified, however, that though the economic loss doctrine is "well-established" in Pennsylvania, the common law rule

5

gives way if there is a "statutory basis to impose liability for economic losses," such as when a statute "provide[s] a private cause of action for economic losses." *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 842-43 (Pa. 2009). The UTPCPL does just that. It permits plaintiffs to recover for "any ascertainable loss of money *or* property, real or personal." 73 Pa. Cons. Stat. § 201-9.2 (emphasis added).

The Pennsylvania Superior Court has extended this logic in considering the economic loss doctrine's relationship to the UTPCPL in two decisions that have directly undermined the basis for our holding in *Werwinski*: *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013) and *Dixon v. Nw. Mut.*, 146 A.3d 780 (Pa. Super. Ct. 2016). In the absence of binding Pennsylvania Supreme Court authority, "[t]he rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). Both *Knight* and *Dixon* must be granted due deference.

In *Knight*, a consumer alleged that she suffered losses due to misrepresentations made by a car dealership. Among other things, the dealership misstated the mileage of the car she was to buy and hid the fact that it had been in prior accidents. *Knight*, 81 A.3d at 951. The Superior Court rejected the dealership's attempt to invoke the economic loss doctrine in shielding itself from liability under the UTPCPL, noting that the Pennsylvania Supreme Court had described the economic loss doctrine as providing that "no cause of action exists for **negligence** that results solely in economic damages unaccompanied by physical injury or property damage." *Id.* at 952 (quoting *Excavation Techs., Inc.*, 985 A.2d

6

at 841 n.3) (emphasis in original).  The Superior Court went on to distinguish the plaintiff's claims from those barred by the economic loss doctrine as (1) "statutory claims brought pursuant to the UTPCPL" that (2) did "not sound in negligence," and accordingly determined that the doctrine did not apply.  *Knight*, 81 A.3d at 952.  Thus, contra our holding in *Werwinski*, the decision in *Knight* acknowledges the significance of the distinction between statutory claims and tort claims, as well as claims grounded in negligence as opposed to intentional misrepresentation.

The Pennsylvania Superior Court was even more explicit in *Dixon*.  There, unlike in *Knight*, the plaintiff brought a UTPCPL claim against an insurance company sounding in negligent misrepresentation for mistakes made in the course of issuing insurance policy billing statements.  *Dixon*, 146 A.3d at 788-89.  The Court read *Knight* to hold that the economic loss doctrine does not apply to UTPCPL claims in any context, no matter whether sounding in negligence or intentional fraud.  *Id.* at 790.  It also expressly acknowledged that its view of the UTPCPL was materially different from our own, leading to a troubling divergence of outcomes for plaintiffs depending on where their claims were to be adjudicated:

> This Court's decision in *Knight* is in tension with the United States Court of Appeals for the Third Circuit's holding that the economic loss doctrine applies to UTPCPL claims.  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670–682 (3d Cir. 2002); *see also Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003) (citing *Werwinski* with approval).  We are, of course, bound by *Knight*.  **We note with concern, however, that federal courts in this Commonwealth (along with federal courts in Delaware, New Jersey, and the Virgin Islands) are still bound by *Werwinski*.** . . .  This split in authority means that state and federal courts

in this Commonwealth follow different substantive rules in considering claims advanced under the UTPCPL.

*Id*. at 790 n.12 (emphasis added).

We acknowledge and appreciate the concern raised by the Court in *Dixon*, and in so doing have determined that it is now appropriate to set aside our holding in *Werwinski* with respect to the economic loss doctrine's application to UTPCPL claims.

Appellee argues that we lack the authority to determine that *Werwinski* is no longer applicable, and that such a decision can only be effectuated by the Court of Appeals ruling en banc. And it is indeed true that ordinarily, "the holding of a panel in a precedential opinion is binding on subsequent panels." Third Circuit I.O.P. 9.1. We have also, however, recognized a narrow exception to this rule: "[W]hen we are applying state law and there is persuasive evidence that it has undergone a change, we are not bound by our previous panel decision if it reflected our reliance on state law prior to its modification." *Robinson v. Jiffy Exec. Limousine Co.*, 4 F.3d 237, 240 (3d Cir. 1993); *see also Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996) (noting that "[a]lthough a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel . . . a panel may reevaluate a precedent in light of intervening authority and amendments to statutes or regulations."). The Pennsylvania Supreme Court's holding in *Excavation Techs.* and the decisions in *Knight* and *Dixon* that build upon it constitute such intervening authority that

8

modifies state law as it existed at the time *Werwinski* was decided. Thus, we hold that the economic loss doctrine no longer may serve as a bar to UTPCPL claims.[3]

### B. Gist of the Action Doctrine

We are now left to consider whether the gist of the action doctrine ought to apply to the facts as they are alleged in this case. We conclude that it does not. The gist of the action doctrine provides that "an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *Dixon*, 146 A.3d at 788 (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014) (footnotes omitted)). In *Bruno*, the Pennsylvania Supreme Court established the following test for applying the gist of the action doctrine:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno*, 106 A.3d at 68 (citations omitted).

---

[3] Accordingly, we need not reach the question briefed by the parties as to whether Earl's home constitutes "other property" that would fall beyond the scope of the economic loss doctrine, as we have determined the economic loss doctrine does not apply to UTPCPL claims. *See 2-J Corp. v. Tice*, 126 F.3d 539, 542 (3d Cir. 1997) (noting that "[a]n essential aspect of the *East River* economic loss doctrine is that while tort recovery is barred for damage a product causes to itself, such recovery is available for damage the failing product causes to 'other property'") (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867 (1986)).

If read expansively, the doctrine could plausibly be understood to bar the instant action, given the existence of a contract between Earl and NVR involving the purchase and construction of the Home. Earl's complaint is not primarily premised upon the terms of the contract, however, but on the marketing and representations that induced her to enter into the contract in the first instance, as well as statements made to her by agents of NVR during the homebuilding process. *Knight* is once again illustrative for our purposes, as the Court encountered a similar set of facts and determined the gist of the action doctrine did not apply:

> Although she purchased the vehicle pursuant to the contract, the alleged representations by Appellees occurred prior the signing of any contract. Furthermore, the above false advertisements, statements, and assurances are rendered unlawful by sections 201–2(4)(v), (vii), (ix), (xi), and (xxi) of the UTPCPL. These are not masked claims for breach of contract; the gist of the action here is in tort, and the contract is collateral to the matters alleged. As such, the gist of the action doctrine did not warrant the dismissal of Knight's UTPCPL claims.

*Knight*, 81 A.3d at 951 (internal citations omitted). As did the plaintiff in *Knight*, Earl alleges NVR made false representations to her about the Home prior to the formation of the contract (in terms of how the Home was "marketed"), in further discussions held during the contract period, and while the Home was in the process of being constructed. Earl also alleges that NVR made false representations after the contract period, once she moved into the house. These alleged actions are collateral to the terms of the contract itself.

While the allegations here and in *Knight* both sound in fraud rather than negligence, in *Dixon* the Superior Court determined that even UTPCPL claims grounded in negligence may not be barred by the gist of the action doctrine:

> Deceptive conduct ordinarily can only take one of two forms, either fraudulent or negligent. As noted above, the pre–1996 catchall provision covered only fraudulently deceptive practices. The broadening of the UTPCPL so as to not require fraud therefore *ipso facto* makes negligent deception, *e.g.*, negligent misrepresentations, actionable under the post–1996 catchall provision.

*Dixon*, 146 A.3d at 790. The *Dixon* Court consequently allowed the plaintiff's claims there to go forward, and both *Dixon* and *Knight* thus suggest that the gist of the action doctrine should not preclude liability under the UTPCPL where the contract is collateral to any allegedly deceptive conduct, as has been alleged in this case. We therefore hold that the gist of the action doctrine does not bar Earl's UTPCPL claim from going forward.

### III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's grant of NVR's motion to dismiss and remand this case for further consideration consistent with this opinion.

11