**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3002
_____

RAYMOND HANDLING CONCEPTS CORP, A New York Corporation,
Appellant

v.

INVATA LLC, FKA Invata Inc, DBA Invata Intralogistics
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:23-cv-00145)
District Judge: Honorable John F. Murphy
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 9, 2024
_____

Before: SHWARTZ, PHIPPS, and MONTGOMERY-REEVES, <u>Circuit Judges</u>.

(Filed: July 18, 2024)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Raymond Handling Concepts Corporation appeals the District Court's order dismissing its contract claims on limitations grounds and tort claims under the gist of the action doctrine. For the reasons set forth herein, we will affirm.

I

A

In early 2018, Raymond contracted to install storage systems at Taylor Farms' fresh produce distribution center. The contract required Raymond to install a software called FastTrak and Raymond subcontracted with Invata, Inc. to provide FastTrak to Taylor Farms. The subcontract, which was prepared by Invata, was to take effect in September 2018, with the installation of FastTrak to be completed by April 2019.

Shortly after the contract was approved, Invata told Raymond that it could not install FastTrak by April 2019, and asked for a two-month extension, which Taylor Farms authorized. This deadline was later extended until August 26, 2019, which Invata failed to meet.

As a result of Invata's repeated failures to meet its deadline, in October 2019, Taylor Farms formally terminated its general contract with Raymond, and Raymond thereafter sought a "monetary concession" from Invata. App. 63. From January through June 2020, all three companies tried to resolve their contract issues. Taylor Farms gave Invata a final chance to redevelop its portion of the project by June 2020, but Invata failed to timely submit a workplan.

B

2

The subcontract between Raymond and Invata provided that (1) Pennsylvania law would govern; (2) "[a]ny action brought by [Raymond] must be brought within one (1) year after the cause of action arose," App. 84 (¶ 5); and (3) Raymond could not bring a claim of "alleged breach of" the subcontract unless each of the following were satisfied:

> (i) Raymond "notifies" Invata "within thirty (30) days from the date of such alleged breach[,]"
> (ii) "Invata does not remedy or correct the breach . . . within sixty (60) days from the receipt of [Raymond's] notice[,]"
> (iii) Raymond "notifies Invata in writing of such claim  . . . within one (1) year from date of acceptance," and
> (iv) Raymond "commences an action to enforce its rights" no "later than forty-five (45) days" after notifying Invata of its claim.

App. 85 (¶¶ 20-22).

In 2023, Raymond sued Invata for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); negligent misrepresentation (Count III); negligence (Count IV); and breach of implied warranty (Count V).  The District Court dismissed the complaint with prejudice, holding that the subcontract's one-year limitations provision barred Raymond's contract claims (Counts I, II, and V),[1] and that the gist of the action doctrine barred Raymond's tort claims (Counts III and IV). Raymond Handling Concepts Corp. v. Invata, LLC, No. 23-145, 2023 WL 6626127, at *11 (E.D. Pa. Oct. 11, 2023).  Raymond appeals.

---

[1] Raymond does not challenge the District Court's holding that its claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of implied warranty are contract claims that fall within a contract for sale.  See Raymond Handling Concepts Corp., 2023 WL 6626127, at *9-10.

II[2]

A

Under Pennsylvania law, the "[g]eneral rule" is that "[a]ny action" based on "contracts for sale" has a four-year statute of limitations.[3] 42 Pa. Cons. Stat. § 5525(a)(2) (citing 13 Pa. Cons. Stat. § 2725). Contracting parties, however, "may reduce the period of limitation" in their contract "to not less than one year." 13 Pa. Cons. Stat. § § 2725(a). The parties here reduced the limitations period in their subcontract. One provision required suit to be brought within one year "after the cause of action arose." App. 84 (¶ 5). A second provision, which addressed "Invata's alleged breach of" the subcontract, required Raymond to bring an action to enforce rights under the subcontract "not later than forty-five (45) days" after Raymond notified Invata of its claim. App. 85 (¶¶ 20-22). Even if we assume that both provisions could apply to Raymond's breach of contract claims, Raymond's claims are untimely.

First, Raymond's complaint was filed too late under the one-year limitations period set forth in paragraph five of the subcontract. Raymond was aware that: (1) Invata

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's order granting a motion to dismiss de novo, Krieger v. Bank of Am., N.A., 890 F.3d 429, 437 (3d Cir. 2018). We accept the factual allegations as true and construe them in a light most favorable to the plaintiff. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "[W]e may affirm on any ground supported by the record." Laurel Gardens, LLC v. McKenna, 948 F.3d 105, 116 (3d Cir. 2020).

[3] "Contracts for sale" include the sale of software. Advent Sys. Ltd. v. Unisys Corp., 925 F.2d 670, 672, 675 (3d Cir. 1991).

had not installed the operational software by the extended August 2019 deadline; (2)

Taylor Farms notified Invata that it was terminating the project on which Invata worked

in October 2019; and (3) despite Taylor Farms giving Invata a final chance to complete

the project by June 2020, Invata failed to timely submit a workplan.  Thus, the cause of

action arose as early as August 2019 and certainly no later than June 2020.  Accordingly,

even if Raymond viewed the additional time (until June 2020) that Taylor Farms gave

Invata to submit a new workplan as delaying the termination, Raymond's 2023 complaint

was still filed after the one-year limitations period expired.[4]

Second, even assuming (a) Raymond satisfied the requirements for the more

specific breach of contract provision in paragraphs twenty to twenty-two, and (b) the

time-period in those provisions is enforceable under Pennsylvania law, 13 Pa. Const. Stat.

§ 2725,[5] the complaint would still be untimely because this provision required Raymond

---

[4] Raymond's argument that the breach of the subcontract is "ongoing" does not cure its statute of limitations problem.  Appellant's Br. at 12.  "Where the contract is a continuing one, the statute of limitations runs from the time when the breach occurs or when the contract is in some way terminated."  Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997).  Because the breach occurred and the contract was terminated in 2019, even under a continuing breach theory, Raymond's 2023 contract claims are time-barred under the contract's limitations periods.

[5] There may be good arguments for applying the more specific provision of paragraphs twenty to twenty-two to this case because this provision specifically addresses breach of contract claims, whereas the provision in paragraph five sets forth only a general limitations period.  See Clairton Slag, Inc. v. Dep't of Gen. Servs., 2 A.3d 765, 773 (Pa. Commw. Ct. 2010) (stating "[w]here there is an apparent inconsistency between general and specific provisions of a contract, specific provisions ordinarily qualify the meaning of general provisions").  Some of the language in these paragraphs, however, arguably sets a limitations period less than the one year permitted under state law.  13 Pa Const. Stat. § 2725.

5

to file any action "not later than forty-five (45) days" after Raymond provided Invata notice of its claim. App. 85 (¶ 22). Raymond knew of its claim since at least October 2019 but did not file suit until 2023.[6]

Because Raymond did not file its complaint within either contractual limitation period, the District Court correctly dismissed Raymond's contract claims as untimely.

B

The gist of the action doctrine "bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." Werwinski v. Ford Motor Co., 286 F.3d 661, 680 n.8 (3d Cir. 2002) (citation omitted) (applying Pennsylvania law), abrogated on other grounds by Earl v. NVR, Inc., 990 F.3d 310, 311 (3d Cir. 2021). Courts apply this doctrine when the claim is one:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.

Addie v. Kjaer, 737 F.3d 854, 866 (3d Cir. 2013) (quoting eToll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).[7]

---

[6] Indeed, Raymond thought that it had a breach of contract claim at the latest in November 2021, when it sued Invata in California state court for breaching the same subcontract based on the facts alleged here.

[7] "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103 (3d Cir. 2001) (alteration in original) (internal quotation marks and citation omitted).

Here, Raymond alleges that (1) Invata made misrepresentations regarding performance, design, manufacturing, and deadlines, as provided by the subcontract and (2) it relied on these misrepresentations and suffered by "paying [Invata] for [its] work and retaining Invata for further work on the [p]roject." App. 67. Because the duties Invata allegedly breached arise squarely "from the contractual obligations [defendant] owed [plaintiff,]" Nicholas Meat, LLC v. Pittsburgh Logistics Sys., Inc., 287 A.3d 836, *15 (Pa. Super. Ct. 2022), appeal denied, 293 A.3d 562 (Pa. 2023), the gist of the action doctrine bars Raymond's negligent misrepresentation claim.[8]

Despite the label affixed to this count of its complaint, Raymond argues that its cause of action for negligent misrepresentation encompasses a fraudulent inducement claim, because it alleged that "Invata's misrepresentations were made solely to induce Raymond and Taylor Farms to continue to retain Invata." Appellant's Br. at 13 (citing App. 67 ¶ 33). While the gist of the action does not bar fraudulent inducement claims, see, e.g., Mirizio v. Joseph, 4 A.3d 1073, 1085 (Pa. Super. Ct. 2010), Raymond's effort to assert a fraudulent inducement claim nevertheless fails.

"The elements of fraud in the inducement are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading

---

[8] Raymond does not challenge the District Court's dismissal of its negligence claim under the gist of the action doctrine and thus it is waived. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). Nonetheless, for the reasons set forth above, Raymond's negligence claim also falls under the gist of the action doctrine.

7

another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (internal quotation marks and citations omitted). Raymond's pleading does not satisfy all of these elements. Among other things, Raymond does not plead with particularity that Invata intentionally misled Raymond for the purpose of Raymond's continued retention of Invata. Rather, Raymond alleges in a conclusory manner that Invata "had no real intention of actually performing or meeting any of the [p]roject milestones" and "had no reasonable basis" for its representations as to its materials and requests for extension of time. App. 67 ¶ 33. Invata's optimism about its ability to produce quality work or meet deadlines, however, does not equate to intentional misrepresentation, and Raymond does not plead sufficient facts to plausibly allege otherwise.

## III

For the foregoing reasons, we will affirm.