**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1692

_____

ROBIN BAPTISTE; DEXTER BAPTISTE,
On Behalf of Themselves and All Others Similarly Situated,
                                        Appellants
v.

BETHLEHEM LANDFILL COMPANY,
A Delaware Corporation doing business as IESI PA
BETHLEHEM LANDFILL

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-18-cv-02691)
District Judge: Honorable Chad F. Kenney

_____

Argued December 9, 2019
_____

Before: RESTREPO, ROTH and FISHER, *Circuit Judges*.

(Filed: July 13, 2020)

Nicholas A. Coulson *[ARGUED]*
Steven D. Liddle
Liddle & Dubin
975 East Jefferson Avenue
Detroit, MI 48207

Philip J. Cohen
Kevin S. Riechelson
Kamensky Cohen & Riechelson
194 South Broad Street
Trenton, NJ 08608

*Counsel for Appellants*

Matthew J. Owens *[ARGUED]*
Miner Barnhill & Galland
325 North LaSalle Street Suite 350
Chicago, IL 60654

Sarah E. Siskind
Miner Barnhill & Galland
44 East Mifflin Street Suite 803
Madison, WI 53703

*Counsel for Amici Public Interest Law Center and
Philly Thrive in Support of Appellants*

Eric L. Klein *[ARGUED]*
Beveridge & Diamond
155 Federal Street Suite 1600
Boston, MA 02110

Robert M. Donchez
Robert A. Freedberg
Florio Perrucci Steinhardt & Cappelli
60 West Broad Street Suite 102
Bethlehem, PA 18018

Michael G. Murphy
John H. Paul
Nicole B. Weinstein
Beveridge & Diamond
477 Madison Avenue 15th Floor
New York, NY 10022

Roy D. Prather, III
Beveridge & Diamond
201 North Charles Street Suite 2210
Baltimore, MD 21201

James B. Slaughter
Beveridge & Diamond
1350 I Street, NW Suite 700
Washington, DC 20005

*Counsel for Appellee*

John F. Stoviak
Saul Ewing Arnstein & Lehr
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102

*Counsel for Amicus National Waste & Recycling Association in Support of Appellee*

Robert L. Byer
Duane Morris
600 Grant Street Suite 5010
Pittsburgh, PA 15219

John E. Moriarty
Duane Morris
30 South 17th Street
United Plaza
Philadelphia, PA 19103

*Counsel for Amici Chamber of Commerce of the United States of America, Pennsylvania Chamber of Business & Industry, and Pennsylvania Farm Bureau in Support of Appellee*

_____

**OPINION OF THE COURT**
_____

RESTREPO, *Circuit Judge*.

Robin and Dexter Baptiste brought an action against the Bethlehem Landfill Company on behalf of a class of homeowner-occupants and renters claiming interference with the use and enjoyment of their homes and loss in property value caused by noxious odors and other air contaminants emanating from the Bethlehem landfill. They brought these claims under three state-law tort theories: public nuisance, private nuisance, and negligence.

The U.S. District Court for the Eastern District of Pennsylvania granted the company's motion to dismiss the complaint. The District Court held that too many residents were similarly affected to sustain a private claim for public nuisance, that the odors affected too many people and the landfill was too far away from them to constitute a private nuisance, and that the plaintiffs had failed to identify a duty of care to maintain a negligence claim. We disagree, and therefore, we will reverse and remand.[1]

## I. RELEVANT BACKGROUND

### A. Legal Framework

Landfill operations in Pennsylvania are governed in part by the Commonwealth's Solid Waste Management Act (SWMA). The SWMA was enacted for several purposes including to "protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes," and to "provide a flexible and effective means to implement and enforce the provisions of this act." 35 P.S. § 6018.102(4)-(5). The SWMA empowers the Pennsylvania Department of Environmental Protection (PADEP or the "department") to enforce the statute's provisions. 35 P.S. § 6018.104(10)-(11); 35 P.S. § 6018.103; 71 P.S. § 1340.501.

---

[1] The plaintiffs brought this class action pursuant to Federal Rule of Civil Procedure 23. The District Court had jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2)(A). We have jurisdiction under 28 U.S.C. § 1291.

One of the SMWA's provisions states that "[a]ny violation of any provision of this act, any rule or regulation of the department, any order of the department, or any term or condition of any permit, shall constitute a public nuisance." 35 P.S. § 6018.601. Among these rules and regulations is an obligation to implement a plan "to minimize and control public nuisances from odors," 25 Pa. Code § 273.218(b)(1), and to be governed by a plan providing for "the orderly extension of municipal waste management systems . . . in a manner which will not . . . constitute a public nuisance." 35 P.S. § 6018.201(e)(1).

The SWMA "does not provide for a private cause of action" and "private persons may only intervene under the SWMA in actions brought by [PADEP]." *Centolanza v. Lehigh Valley Dairies, Inc.*, 635 A.2d 143, 149 (Pa. Super. Ct. 1993), *aff'd*, 658 A.2d 336 (Pa. 1995). Notwithstanding this limitation, the SWMA includes an express carve out or savings clause preserving private "rights of action or remedies" existing "under the common law or decisional law or in equity." 35 P.S. § 6018.607.

## B. Plaintiffs' Action

The Baptistes are homeowners residing in Freemansburg, Pennsylvania, which is located on the west bank of the Lehigh River. East of the river is Lower Saucon Township, where Bethlehem owns and operates a 224-acre solid waste disposal facility and landfill. The landfill is permitted to accept up to 1,375 tons of waste daily. As the

6

waste decomposes, it releases "odorous landfill gas, leachate and other byproducts."[2] JA29 (Compl. ¶ 8).

In 2018, the Baptistes sued Bethlehem for public nuisance, private nuisance, and negligence. The plaintiffs asserted these claims on behalf of a putative class of other homeowner-occupants and renters in about 8,400 households within a 2.5-mile radius of the landfill, claiming property damages in excess of $5 million.

According to the complaint, Bethlehem is not operating the landfill in accordance with the SWMA and industry standards, causing nearby neighborhoods, homes and yards to be "physically invaded by noxious odors, pollutants and air contaminants[.]" JA29 (Compl. ¶ 12); *see* JA32 (Compl. ¶ 27) (alleging that Bethlehem "negligently failed to construct, maintain and/or operate the landfill, and caused the invasion of Plaintiffs' property by noxious odors, air contaminants, and other airborne pollutants").

Over the years, residents have complained to PADEP and Lower Saucon Township about "odorous emissions" from the landfill. JA30 (Compl. ¶ 13). Bethlehem has received numerous fines and citations from PADEP and the township for its failure to properly manage and maintain the landfill, such as the "failure to implement a gas control and monitoring plan to effectively monitor gas collection for nuisance potential," the failure to place covers atop the trash piles to "prevent vectors, odors, blowing litter, and other nuisances"

---

[2] Leachate is water that has been contaminated by soluble and often harmful residues or chemicals from the solid waste through which it passes.

from escaping the landfill, and the "failure to implement the Nuisance Minimization and Control Plan to minimize and control conditions that are harmful to the environment or public health, or which create safety hazards, odors, dust, noise, unsightliness, and other public nuisances." JA30-31 (Compl. ¶ 16 (d)-(f)).

Some residents have contacted counsel to document their experiences with the landfill, describing "the sickening odors as obnoxious, foul, and nauseating." JA32 (Compl. ¶ 20). Residents complained that the odors prevent them from using and enjoying their homes and private land. For instance, residents are unable to use their swimming pools, spend time on their porches, host guests (due to embarrassment), or play in their yards with their children or pets. "At times, the stench becomes so pungent that it permeates the walls of [their] homes," forcing them to keep "all windows and doors sealed shut and virtually render[ing] them entrapped in their own homes." JA32 (Compl. ¶ 22).

On Bethlehem's motion, the District Court dismissed the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Having dismissed all the claims, the court also dismissed the Baptistes' request for punitive and injunctive relief. The Baptistes timely appealed.

### C. Intervention by *Amici*

We granted leave to the Public Interest Law Center and Philly Thrive to appear as *amici* in support of the Baptistes. These two non-profit organizations sought to shine light on the "environmental justice" implications of the District Court decision for "communities disproportionately impacted by

8

pollution—that is, low-income communities and communities of color."[3]  Public Interest Law Center Amicus Br. 2.

The Chamber of Commerce of the United States of America, the Pennsylvania Chamber of Business & Industry, the Pennsylvania Farm Bureau, and the National Waste & Recycling Association appeared as *amici* in support of Bethlehem.  In their view, the District Court decision preserves the business community's ability to "coordinate" directly with regulatory agencies, rather than defend numerous private lawsuits, and redress large-scale environmental harms without reducing "investment and quality of goods and services."  Chamber of Commerce Amicus Br. 5, 24-31; *see* National Waste & Recycling Association Amicus Br. 1,16-19.

## II. STANDARD OF REVIEW

We exercise plenary review over the dismissal of a complaint under Federal Rule 12(b)(6).  Our role is to "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  A complaint's "well-pleaded allegations" must be accepted as true and must be viewed "in the light most favorable to the plaintiffs."

---

[3] "Environmental justice embodies the principles that communities and populations should not be disproportionally exposed to adverse environmental impacts."  PADEP, *Environmental Justice*, https://www.dep.pa.gov/PublicParticipation/OfficeofEnvironmentalJustice/Pages/default.aspx (last seen July 13, 2020).

9

*McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted).

## III. DISCUSSION

The Baptistes assert that they have sufficiently pleaded the necessary elements for each of their causes of action: public nuisance, private nuisance, and negligence. We will address the nuisance claims together, because the analysis overlaps in significant respects, before turning to negligence.

### A. Nuisance

Common-law nuisance is a notoriously perplexing and unruly doctrine, seeming to defy all efforts to draw bright lines around it. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496 n.17 (1987) ("There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'") (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON LAW OF TORTS 616 (5th ed. 1984)).

The father of the leading treatise on torts, William Prosser, considered the law of nuisance a "legal garbage can" full of vagueness and uncertainty. William L. Prosser, *Nuisance Without Fault*, 20 TEX. L. REV. 399, 410 (1942). Courts have similarly struggled to find their footing on this legal quagmire. As Justice Blackmun observed, "[O]ne searches in vain, I think, for anything resembling a principle in the common law of nuisance." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1055 (1992) (dissenting).

The Baptistes contend that the District Court misapprehended foundational nuisance principles, and as a

10

result, imposed restrictions on their public and private nuisance claims that do not exist under Pennsylvania common law.

Bethlehem disagrees. It asserts that the District Court got it right, albeit for a slightly different reason. Bethlehem argues that the Baptistes have not alleged an ordinary public or private nuisance, but rather a so-called "mass nuisance"—a large-scale industrial nuisance that is too large and widespread to be actionable by private persons. Appellee's Br. 28. According to Bethlehem, the state holds the exclusive power to remedy these sorts of nuisances.

To clear out some of the debris from this cluttered area of the law, we begin with the basics. Consistent with the Restatement (Second) of Torts, Pennsylvania law recognizes two types of nuisances: (i) public nuisance and (ii) private nuisance. *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1071-72 (Pa. Super. Ct. 2014) (citing *Pa. Soc'y for the Prevention of Cruelty to Animals v. Bravo Enters., Inc.*, 237 A.2d 342, 348 (Pa. 1968) ["*PSPCA*"]); *see* RESTATEMENT (SECOND) OF TORTS § 821A (1979); 2 SUMM. PA. JUR. 2D TORTS § 21:4 (2d ed.); *see also* Prosser, *Nuisance Without Fault*, *supra* at 411 (explaining that "[p]roperly used," the term "'nuisance,' refers to two, and only two, types of invasions," public nuisance and private nuisance, and noting that "[t]here is, properly, no other kind of nuisance"). Thus, the Baptistes' nuisance claims must rise or fall on these two theories.

## 1. Public Nuisance

A public nuisance is "an unreasonable interference with a right common to the general public," such as the right to clean public water and fresh air in public spaces. *Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 315 (3d Cir. 1985)

11

(quoting RESTATEMENT (SECOND) OF TORTS § 821B(1)); *Machipongo Land & Coal Co. v. Pennsylvania*, 799 A.2d 751, 773 (Pa. 2002). Because these rights are held in common by the public at large and no one owns them to the exclusion of others, the remedy for their infringement ordinarily lies "in the hands of the state." *Philadelphia Elec. Co.*, 762 F.2d at 315 (quoting William L. Prosser, *Private Action for Public Nuisance,* 52 VA. L. REV. 997, 999 (1966)).

There is no dispute that the Baptistes have alleged the existence of a public nuisance based on Bethlehem's alleged failure to operate its facility in accordance with the SWMA and the resulting discomfort and inconvenience caused by the offensive odors emanating from the landfill into their neighborhood. *See Machipongo*, 799 A.2d at 773 (stating that an unreasonable interference with a public right may occur when "conduct involves a significant interference with . . . the public comfort or the public convenience," or when "conduct is proscribed by a statute, ordinance or administrative regulation" (quoting RESTATEMENT (SECOND) OF TORTS § 821B)). The question is whether the Baptistes have properly pleaded a private claim for this public nuisance. The answer is yes.

When a public nuisance interferes with an individual's personal rights, such as the right to use and enjoy "private land," the aggrieved person has a private cause of action to remedy the infringement of his personal rights. *Philadelphia Elec. Co.*, 762 F.2d at 315 (quoting Prosser, *Private Action*, *supra*, at 999); *see* 2 SUMM. PA. JUR. § 21:5 com. ("The harm suffered by the landowner is a particular harm differing in kind from that suffered by the general public, so the landowner can recover for the public nuisance."). To be actionable, the infringement of the personal rights must result in "significant

12

harm," that is, "harm of importance involving more than slight inconvenience." *Harford Penn-Cann Serv., Inc. v. Zymblosky*, 549 A.2d 208, 209 (Pa. Super. Ct. 1988) (quoting RESTATEMENT (SECOND) OF TORTS § 821F com. c).

Stated differently, to sustain a private claim on a public nuisance theory, "a plaintiff must have suffered a harm of greater magnitude and of a different kind than that which the general public suffered." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000); *see PSPCA*, 237 A.2d at 348 ("[A] public nuisance may be enjoined at the behest of a private citizen or group of citizens, if . . . their property or civil rights[] are specifically injured by the public nuisance over and above the injury suffered by the public generally.").

In *Philadelphia Electric Co.*, we rejected a utility company's attempt to recover costs related to cleaning up pollution in the Delaware River. Although these pecuniary damages were different in kind from the harm suffered by the general public, there was no indication that the company had been "directly harmed in any way by the pollution in those waters." 762 F.2d at 316. But we observed that the company may have been able to assert a private claim if, "as a riparian landowner," it "had suffered damage to *its land* or *its operations* as a result of the pollution of the Delaware." *Id.* (emphasis added); *cf. Bell v. Cheswick Generating Station*, 734 F.3d 188, 189, 192, 196-97 (3d Cir. 2013) (holding that the Clean Air Act did not preempt nuisance claims brought by Pennsylvania homeowners and residents for interference with use and enjoyment of their private land caused by the outmigration of noxious odors and particulates from a nearby coal-fired electrical plant).

13

Here, the Baptistes seek to vindicate their right to use and enjoy their home and obtain the full value of their property—personal rights that are qualitatively different ("of a different kind") than the general, non-possessory right to clean air held in common with the community at large. *Philadelphia Elec. Co.*, 762 F.2d at 316. The alleged harm caused by the infringement of these personal rights is also quantifiably larger ("of greater magnitude") than the harm caused by the interference with the general right to clean air. *Allegheny Gen. Hosp.*, 228 F.3d at 446.

While everyone in the community—including visitors, commuters and residents alike—may suffer from the discomfort of having to breathe polluted air in public spaces, the Baptistes have identified cumulative harms that are unique to them and their fellow residents as homeowner-occupants or renters, such as the inability to use and enjoy *their* swimming pools, porches, and yards. The complaint specifically alleges that the presence of these odors is "especially injurious" to class members "as compared with the public at large, given the impacts to their homes." JA32 (Compl. ¶ 28). These injuries are above and beyond any injury to the public, because they involve private property damages that the public at large has not endured. In short, the Baptistes sufficiently alleged a "particular damage" to sustain a private claim for public nuisance. *Philadelphia Elec. Co.*, 762 F.2d at 316.

The District Court's contrary conclusion is not supported by Pennsylvania law. The court reasoned that, because the presence of odors affected thousands of households in the same way, none of the residents could claim a "special harm." JA9. The court relied primarily on a district court decision, quoting an isolated statement: "[W]here there are a large number of plaintiffs, the harm those plaintiffs

suffered is not special." *In re One Meridian Plaza Fire Litig.*, 820 F. Supp. 1460, 1481 (E.D. Pa. 1993), *vacated in part*, No. CIV. A. 91-2171, 1993 WL 224167 (E.D. Pa. June 14, 1993), *and rev'd on other grounds sub nom. Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270 (3d Cir. 1993)).

There were two missteps in the District Court's analysis.

First, the District Court incorrectly conflated the putative class with the general public. These two groups are not conterminous. The Baptistes have asserted their claims specifically on behalf of a class of homeowner-occupants and renters, not the community at large. Rather than compare the injuries suffered by the Baptistes with the same injuries suffered by similarly situated class members, the District Court should have compared the injuries suffered by putative class members as homeowner-occupants and renters with the harm shared by all community members including nonresidents such as visitors and commuters. As explained above, that comparison reveals that the Baptistes have alleged additional invasions of their private property rights resulting from the interference with the common right to clean air.

Second, the District Court's reliance on *One Meridian* was misplaced. There, a large fire engulfed a building in downtown Philadelphia, causing massive street closures. Local businesses brought a class action seeking compensation for lost profits and loss of access to their business properties under a public nuisance theory, among others. *One Meridian*, 820 F. Supp. at 1464, 1471. While the *One Meridian* court speculated that allowing too many plaintiffs into the class might "generalize the harm," it did not impose a numerical limitation on the size of the class. *Id*. at 1482. Rather, it

15

defined the class by the nature and degree of the harm suffered, that is, "lost profits" that were "reasonabl[y] certain[]" or "lack of access" that was "substantial." *Id.*; *see* 2 SUMM. PA. JUR. § 21:5 illus. & n.4 (citing *One Meridian* for the proposition that "the only parties who may have suffered peculiar harm required for a public nuisance claim . . . were those businesses who could show with reasonable certainty that they lost profits due to the closure of the streets and who suffered substantial lack of access").

It also bears mentioning that *One Meridian* did not rely on Pennsylvania authority for the suggestion that real property damages (such as those alleged here) become "generalized" or "not special" if a large number of plaintiffs suffer the same injury.[4] To our knowledge, no Pennsylvania court has so held,

---

[4] We note that the *One Meridian* court analyzed lack of access and lost profits together, as if they were indistinguishable. They are not. Lack of access is an invasion of a "property right in the land," RESTATEMENT § 821C com. f, while lost profits are a form of pecuniary or economic losses that are not necessarily connected to invasions of real property, *id.* § 821C com. h. That difference matters. While we have found no Pennsylvania authority for limiting the number of plaintiffs that can recover for interference with real property rights on a nuisance theory, there is some authority for the proposition that businesses may lose their ability to recover lost profits on a public nuisance theory when all or the great majority of businesses in a community are similarly affected or when their economic losses are untethered from any real property damages. *See Duquesne Light Co. v. Pennsylvania Am. Water Co.*, 850 A.2d 701, 702, 707 (Pa. Super. Ct. 2004); RESTATEMENT (SECOND) OF TORTS § 821C com. h. We need

16

either before or after *One Meridian*. We believe that the District Court erred in taking that step first.

In brief, the Baptistes have properly stated a private claim for public nuisance.

## 2. Private Nuisance

The Baptistes have also stated a private nuisance claim. A private nuisance exists when a person's conduct invades "another's interest in the private use and enjoyment of land," and that invasion is either intentional and unreasonable or unintentional but negligent. *Youst*, 94 A.3d at 1072 (citing RESTATEMENT (SECOND) OF TORTS § 822). There is no dispute that the Baptistes have sufficiently pleaded these elements.

Still, the District Court dismissed the private nuisance claim, adopting a similar logic as it did for public nuisance. The court reasoned that, because the outmigration of odors was a public nuisance insofar as it affected the "whole community" rather than only "some particular person," it could not also be a private nuisance. JA13 (quoting *Phillips v. Donaldson*, 112 A. 236, 246 (Pa. 1920)). That was legal error.

Although public and private nuisance are distinct causes of action, they are not mutually exclusive. Again, the critical difference between these two theories of liability is not the number of persons harmed but the nature of the right affected:

not address that distinction any further, because it is not relevant here. The Baptistes are not seeking economic losses, only real property damages, *i.e.*, loss of real property value and interference with the use and enjoyment of their homes and private land.

17

a public nuisance requires interference with common or *public* rights, while a private nuisance requires only interference with personal or *private* rights.[5] *See Philadelphia Elec. Co.,* 762 F.2d at 315; *Youst*, 94 A.3d at 1071; *see* 58 AM. JUR. 2D NUISANCES §§ 25, 32 (2020).

When a private or public nuisance is so widespread that it affects both public and private rights, it may be actionable as either public or private "or both public and private." *Youst*, 94 A.3d at 1071 (citing *PSPCA*, 237 A.2d at 348). There may be some overlap between these two causes of action, for instance when, as here, the alleged interference with private land supplies the basis for both the private nuisance claim and the particular harm required to sustain a private claim for public nuisance. *See, e.g., Umphred v. VP Auto Sales & Salvage, Inc.*, No. 1372 MDA 2014, 2015 WL 6965725, at *12 (Pa. Super. Ct. June 24, 2015) (affirming the lower court's conclusion that "noise pollution" from the operation of a scrap metal recycling facility was actionable by nearby residents both as a public and private nuisance, because it interfered with both public and private rights);[6] *see also* RESTATEMENT (SECOND) OF TORTS §§ 821C com. e, 821B com. h.

---

[5] *Phillips* is not to the contrary. It is clear from the context of that case that the distinction the court draws between public and private nuisance focuses on differentiating between whether the nuisance affects the rights of the "general public" or the rights of a "private individual." 112 A. at 238.

[6] We cite *Umphred* for illustrative purposes only, as we are cognizant that the Pennsylvania Superior Court has limited the precedential weight of any "unpublished memorandum decision filed prior to May 2, 2019." 210 Pa. Code § 65.37.

18

The District Court further held that private nuisance claims are only available to resolve conflicts between proximate or adjoining neighbors. The court found that the Baptistes' home, which is located about 1.6 miles from the landfill, was too far to qualify as a "*neighboring* property." A13. That, too, was legal error.

We have found no support under Pennsylvania law for rejecting a private nuisance claim on the ground that the property affected was too far from the source of the alleged nuisance. Bethlehem points to a decision from more than a century ago in which the Pennsylvania Supreme Court noted "the proximity" of the property to the source of the nuisance, *Gavigan v. Atl. Ref. Co.*, 40 A. 834, 835 (Pa. 1898), but that case did not hold that a more distant property would not have been able to bring the same claim. Nor have we seen any case citing *Gavigan* for that proposition in the 120 years since it was decided.

Conversely, the last reported case to cite *Gavigan* recognized the existence of a private nuisance even though the source of the alleged nuisance—manufacturing plants emitting "corrosive gases, smoke, lead particles and lead oxides"—was located about "one and one-half miles" from the plaintiffs' property. *Noerr v. Lewistown Smelting & Ref., Inc.*, 60 Pa. D. & C.2d 406, 408, 414 (Pa. Com. Pl. 1973). More recently, in a nuisance action brought against another landfill, a Pennsylvania court rejected this supposed "neighboring requirement" as meritless. *Leety v. Keystone Sanitary Landfill*,

19

No. 2018 CV 1159, slip op. at 6 (Pa. Com. Pl. Jan. 24, 2019) (internal quotation marks omitted).[7]

In sum, because the Baptistes have alleged that their private property rights are being significantly and unreasonably infringed by the presence of noxious odors and air contaminants released by the Bethlehem landfill, they have stated both a private claim for public nuisance and a private nuisance claim.

### 3. "Mass Nuisance"

We conclude our nuisance analysis by addressing Bethlehem's "mass nuisance" theory. Bethlehem contends that when too many people complain of the same particular harm, they lose the right to bring a private action to remedy that injury. Bethlehem does not identify a precise number at which that right is extinguished. It argues that this threshold is crossed when the nuisance is so widespread that the number of aggrieved persons becomes "indeterminate" or when it affects

---

[7] The other cases cited by the District Court and Bethlehem are inapposite. They focus on "neighboring or adjoining" properties for different reasons: (i) nuisance requires "contemporaneous" or simultaneous uses of land by the plaintiff and the defendant and (ii) a plaintiff cannot assert a nuisance claim against a defendant when "the nuisance property and the affected property are one and the same." *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 459-60 (D.N.J. 2009); *see also Philadelphia Elec. Co.,* 762 F.2d at 314-15; *Cavanagh v. Electrolux Home Prod*, 904 F. Supp. 2d 426, 433-34 (E.D. Pa. 2012). Neither of those concerns are present here.

an entire neighborhood, as opposed to only a small subset of its population, regardless of its size.

In other words, if the Baptistes and only a few other households were affected by the odors, they would have cognizable nuisance claims. But because the odors reach the whole neighborhood (some 20,000 residents by Bethlehem's count), none of the residents may bring a private claim to redress infringements of the same personal rights. Instead, according to Bethlehem, they must depend entirely on PADEP or other public officials to remedy the situation on their behalf.

Bethlehem insists that the Pennsylvania Supreme Court endorsed this theory more than a century ago in *Gavigan* and then again in *Edmunds v. Duff*, 124 A. 489 (Pa. 1924), a case that Bethlehem belatedly cited for the first time at oral argument. But neither of these cases supports Bethlehem's position. *Edmunds* actually undermines it. There, the court held that individual residents retained the right in equity to protect themselves against any "interference with the enjoyment of private homes" caused by "the operation of a business or industry tending to render the immediate community a less desirable place in which to live," even though "the resulting injury . . . necessarily affects practically all persons who happen to be living in the immediate neighborhood[.]" *Edmunds*, 124 A. at 492. The *Edmunds* court alluded to "numerous cases" illustrating this point and noted that residents that were "especially injured" in those cases were "invariably" entitled to relief on an individual basis, "regardless of the fact that the acts complained of may also have amounted to a public nuisance and liable to be dealt with as such." *Id*.

21

To be sure, neither party has submitted a decision of the Pennsylvania Supreme Court directly addressing the question of whether there is a limit on the number of plaintiffs that can recover private property damages on a nuisance theory.[8] "In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case. In predicting how the highest court of the state would resolve the issue, [we] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009) (internal citations omitted) (footnotes omitted) (alteration supplied).

We are not convinced that Pennsylvania's highest court would adopt Bethlehem's novel position in this case. In addition to the Pennsylvania Supreme Court cases and other authorities establishing the controlling legal principles referenced in our nuisance analysis above, there are several examples of state or federal courts allowing private nuisance actions by large numbers of homeowners and residents for widespread industrial nuisances in Pennsylvania, including an almost identical class action recently filed against another landfill in the Court of Common Pleas of Lackawanna County. *See Leety*, No. 2018 CV 1159, slip op. at 1; *see also, e.g., Diehl v. CSX Transp., Inc.,* 349 F. Supp. 3d 487, 494-95, 507-08 (W.D. Pa. 2018) (denying a motion to dismiss a private nuisance claim brought by a putative class of "approximately

---

[8] The parties agree that this question does not warrant certification to the Pennsylvania Supreme Court.

1,000" residents); *Maroz v. Arcelormittal Monessen LLC*, No. 15-cv-0770, 2015 WL 6070172, at *2, *4 (W.D. Pa. Oct. 15, 2015) (denying a motion to dismiss private nuisance claims against a metal processing plant emitting "noxious odors and air particulates," brought by an unspecified number of "surrounding residents").

Bethlehem cites other Pennsylvania cases that it claims support its position. Yet none of those cases imposed a limit on the number of plaintiffs who can recover for the unwarranted invasions of their private property rights. For instance, Bethlehem cites at length *Brunner v. Schaffer*, 1 Pa. D. 646 (Pa. Com. Pl. 1892), for the proposition that "widely-dispersed airborne emissions across an entire neighborhood is a claim for public nuisance without 'special injury,' and is redressable solely by public authorities like PADEP." Appellee's Br. 23. Yet *Brunner* says no such thing.

The *Brunner* court itself acknowledged that the right of action for public or private nuisance "depends upon the character of the injury solely," not "the number of people who suffer by it." 1 Pa. D. at 648. True, the court rejected a private nuisance claim for foul odors that were "entering into the open windows of the plaintiff's house," but it did so because the plaintiff had not specifically alleged a "special injury" to property or persons distinct from the general discomfort suffered "by all the others in that locality." *Id*. at 649. There was no indication that the plaintiff had complained of any interference with the use and enjoyment of her home, nor of any "property destroyed or depreciated." *Id*.

Nor do we see any indication that cases from other jurisdictions —to the extent that they support Bethlehem's position—have gained any traction in Pennsylvania courts. *Cf.*

23

58 AM. JUR. 2D NUISANCES § 37 (noting that some courts have stated that a private nuisance is limited to a "relatively few persons" or a "determinate number of persons," but citing only a handful of out-of-state cases).

All that Bethlehem is left with are policy arguments. Bethlehem believes that leaving the remediation of large-scale industrial nuisances to the exclusive discretion of democratically accountable public officers is a sensible rule, because subjecting public utilities such as landfills to liability for private damages at the behest of thousands or millions of individuals would pose an "existential threat" to critical services that benefit the whole community. Oral Arg. Audio 24:55-25:00, 29:10-15. Their supporting *amici* also warn against allowing "piecemeal" litigation "to attack landfill operations" that are already subject to "intense regulatory scrutiny," because it could undermine the "consistent application" of the regulatory regime. National Waste & Recycling Association Amicus Br. 17, 19-20; *see* Chamber of Commerce Amicus Br. 28-29.

The Baptistes beg to differ. They counter that the right to bring a private cause of action is a longstanding and important legal tool for protecting private property rights against the incursion of industrial nuisances. They note that, by including a savings clause in the SWMA, the Pennsylvania legislature expressly preserved the right to bring private actions under the common law to redress infringements of personal rights in addition to any other remedies that may be available through public action under that statute. *See* 35 P.S. § 6018.607 ("It is hereby declared to be the purposes of [the SWMA] to provide *additional* and *cumulative* remedies[.]" (emphasis added)); *Lutz v. Chromatex, Inc.,* 718 F. Supp. 413, 428 (M.D. Pa. 1989) ("[T]he legislature obviously had the

24

rights of private citizens in mind when it drafted the [SWMA] but elected to protect those rights by way of existing common law remedies, such as actions for negligence and nuisance.").

Their supporting *amici* emphasize that this private right is of greater importance to historically underrepresented communities whose interests are not always fully addressed by public agencies or through the political process. For instance, recent studies have shown that environmental pollution, including from landfills, has a disparate impact on racial-ethnic minorities and low-income communities. *See, e.g.*, Christopher W. Tessum *et al.*, *Inequity in Consumption of Goods and Services Adds to Racial-Ethnic Disparities in Air Pollution Exposure*, 116 PROC. NAT'L ACAD. SCI. 6001, 6001 (2019) (finding that "non-Hispanic whites experience . . . ~17% less air pollution exposure than is caused by their consumption," while "Blacks and Hispanics on average bear a 'pollution burden' of 56% and 63% excess exposure, respectively, relative to the exposure caused by their consumption"); Kathy Seward Northern, *Battery and Beyond: A Tort Law Response to Environmental Racism*, 21 WM. & MARY ENVTL. L. & POL'Y REV. 485, 498-505 (1997) (reviewing empirical research indicating that landfills and other waste disposal facilities are significantly more likely to be built in minority and low-income communities).

Yet environmental laws remain underenforced in those communities. *See, e.g.*, R. Shea Diaz, *Getting to the Root of Environmental Injustice: Evaluating Claims, Causes, and Solutions*, 29 GEO. ENVTL. L. REV. 767, 779 (2017) (reviewing empirical research suggesting that environmental

"enforcement is less vigilant in minority and low-income communities").[9]

Notwithstanding these important policy concerns, we remain tethered to what Pennsylvania law requires. We have not been presented with any Pennsylvania authority for the proposition that an individual's right to recover private property damages on a nuisance theory turns on the size of the nuisance or the number of persons harmed, as opposed to the nature of the rights affected or the degree of the harm suffered. And we see no reason to depart from longstanding principles that allow individuals to recover private property damages caused by widespread nuisances, especially where, as here, the number of plaintiffs is not so large as to be "indeterminate," as

---

[9] PADEP has also recognized that "minority and low-income Pennsylvanians have been forced to bear a disproportionate share of adverse environmental impacts." PADEP, Environmental Justice, https://www.dep.pa.gov/PublicParticipation/OfficeofEnvironmentalJustice/Pages/default.aspx (last seen July 13, 2020). In fact, PADEP has identified Freemansburg, where the Baptistes reside, as an "environmental justice area," meaning an area "where 20 percent or more individuals live in poverty, and/or 30 percent or more of the population is minority." *See* PADEP, PA Environmental Justice Areas, https://www.dep.pa.gov/PublicParticipation/OfficeofEnvironmentalJustice/Pages/PA-Environmental-Justice-Areas.aspx (last seen July 13, 2020); PADEP, Environmental Justice Areas of Pennsylvania, http://files.dep.state.pa.us/PublicParticipation/Office%20of%20Environmental%20Advocacy/EnvAdvocacyPortalFiles/Environmental_Justice_Areas_PA.pdf (last seen July 13, 2020).

26

Bethlehem posits, but rather is defined and limited to homeowner-occupants and renters within a 2.5-mile radius from the landfill.

To adopt Bethlehem's novel position would produce the anomalous result of penalizing small polluters while exempting larger polluters from the same liability. We decline to take that step without a clear directive from the Pennsylvania Supreme Court.

## B. Negligence

We now turn to the negligence claim. In Pennsylvania, a plaintiff complaining of negligence must establish that (i) the defendant has a legal duty to conform to a certain standard of care to prevent unreasonable risks to the plaintiff, (ii) the defendant's conduct breached that duty, (iii) the breach caused an injury to the plaintiff, and (iv) the injury resulted in actual losses or damages. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005); *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005).

The parties' arguments on negligence have evolved throughout the litigation. In the District Court, Bethlehem sought dismissal of the negligence claim on the ground that the Baptistes had failed to identify a legal duty to prevent the outmigration of odors or other nuisance conditions.

In response, the Baptistes initially argued that the relevant duty was found in Bethlehem's obligation to comply with certain requirements under the SWMA and that any violation of those statutory provisions constituted a breach of that duty. At the hearing before the District Court, the Baptistes refined their position. Acknowledging that the

27

SWMA did not create a legal duty owed to private individuals, the Baptistes invoked a common-law duty of care arising from Bethlehem's "affirmative act" of operating a landfill. JA74; *see* JA38 (Compl. ¶ 63) (alleging that Bethlehem breached its "duty to exercise ordinary care and diligence when it improperly constructed, maintained and/or operated the landfill").

The District Court ignored this common-law argument, treated the Baptistes' statute-based argument as a claim of negligence *per se*, and held that negligence *per se* was not actionable under the SWMA.

On appeal, the Baptistes assert that the District Court erred not because it rejected a negligence *per se* claim but because it did not recognize the existence of a common-law duty. According to the Baptistes, "Pennsylvania courts have long recognized" that when a person undertakes "affirmative, risk-causing conduct," such as operating a landfill, that person assumes a common-law duty to protect others "against an unreasonable risk of harm arising out of that act." Appellants' Br. 28-29, 31 (internal quotation marks omitted).

Bethlehem modified its argument accordingly. On appeal, Bethlehem concedes that it owes the plaintiffs a common-law duty to undertake its landfilling operations with reasonable care but disputes the content of that duty. According to Bethlehem, "the duty is to protect others against an unreasonable risk of *harm*," and it argues that, "in this context, 'harm' means *physical* harm, not mere nuisance" such as odors.[10] Appellee's Br. 34-35. Bethlehem contends for the

_____

[10] Bethlehem cites *Gilbert v. Synagro Cent., LLC*, 90 A.3d 37 (Pa. Super. Ct. 2014), and *Horne v. Haladay*, 728 A.2d

28

first time that, because the Baptistes have not pleaded any *physical* injury to persons or property, they have failed to state an *independent* claim for negligence.

That argument is drastically different from the issue presented to and addressed by the District Court. As the parties stand before us, there is no longer any dispute that Bethlehem has a common-law duty to operate the landfill in a manner that avoids any unreasonable risk of harm to the plaintiffs.[11] On

954 (Pa. Super. Ct. 1999), to suggest that the Baptistes cannot rely on the same nuisance conditions to state a separate negligence claim. Not so. The key difference between *Gilbert* and *Horne* on the one hand and this case on the other is the allegation of wrongful conduct (*i.e.*, breach of a legal duty), which was not at issue in *Gilbert* or *Horne*. *See Gilbert*, 90 A.3d at 51 ("As in *Horne*, the operative facts here establish that the Residents have asserted nuisance claims, not negligence claims—namely claims based upon a use of property that 'is *not wrongful in itself*, but only in the consequences which may flow from it.'" (citing *Kramer v. Pittsburgh Coal Co.*, 19 A.2d 362, 363 (Pa. 1941) (emphasis added)).

[11] Indeed, in Pennsylvania, a duty of reasonable care attaches to persons undertaking affirmative, risk-causing acts. *Dittman v. UPMC*, 196 A.3d 1036, 1046-47 (Pa. 2018). That includes the operation of industrial sites. *See, e.g.*, *Leety*, No. 2018-cv-1159, slip op. at \*7 (holding that plaintiffs had sufficiently alleged that a landfill operator owed surrounding property owners a "duty to exercise ordinary care and diligence" based on "[i]ndustry standards of care"); *Noerr*, 60 Pa. D. & C.2d at 453 (finding that the failure to install and properly operate adequate pollution controls was negligent). Courts have also looked to the SWMA or similar statutes to

29

that basis alone, we will reverse the District Court's dismissal of the negligence claim.

Still, the question remains whether the Baptistes have sufficiently pleaded a cognizable injury to state an independent negligence claim. *See LaForm v. Bethlehem Twp.*, 499 A.2d 1373, 1384 (Pa. Super. Ct. 1985); RESTATEMENT (SECOND) OF TORTS §§ 371, 497. The Baptistes believe they have sufficiently pleaded physical property damages insofar as they alleged that "noxious odors, pollutants and air contaminants" have "physically" invaded their property, JA29 (Compl. ¶ 12), constituting a "hazard to health, safety, or property." JA30-31 (Compl. ¶ 16). At oral argument, the Baptistes noted that they also alleged the outmigration of "landfill gas," which they claim is composed primarily of "hydrogen sulfide," an odorous chemical that can be hazardous to human health after repeated exposure. Oral Arg. Audio 41:35-55.

We will not venture into the weeds of this issue in the first instance. *See Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272-73 (3d Cir. 2004) ("Our Circuit adheres to a well established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court." (internal quotation marks omitted)). However, because the parties have not argued forfeiture or waiver of these new arguments, we will leave it to the District Court to determine whether to consider

---

identify the relevant standard of care and considered "evidence of the violation of the SWMA as evidence of negligence." *Hartle v. FirstEnergy Generation Corp.*, No. CIV.A. 08-1019, 2014 WL 1117930, at *6 (W.D. Pa. Mar. 20, 2014).

the question of physical injury on remand either before or at the summary judgment stage.[12]

## IV. CONCLUSION

For these reasons, we will reverse the District Court decision and remand for further proceedings consistent with this opinion.

---

[12] Conceptually, it is not difficult to conceive how the presence of hazardous particulates in the air could constitute physical property damage if these pollutants infiltrate physical structures, as is the case when hazardous chemicals seep into private wells through contamination in groundwater. *See Ayers v. Jackson Twp.*, 525 A.2d 287, 294 (N.J. 1987); *see also Gates v. Rohm & Haas Co.*, No. CIV.A. 06-1743, 2008 WL 2977867, at *3 (E.D. Pa. July 31, 2008) ("[T]he physical presence of vinyl chloride [a hazardous substance] in the air, even if undetectable, constitutes a physical injury to the property for purposes of common law property damage claims."). Drawing all reasonable inferences in favor of the Baptistes, as required at the pleadings stage, the allegations in the complaint—namely that "landfill gas" and other hazardous contaminants have physically invaded the plaintiffs' property and "permeate[d] the walls"—may be enough to satisfy that requirement.