NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1096
_____

THE PLASTIC SURGERY CENTER, P.A.,
                                         Appellant

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY;
XYZ CORP., 1-10 (fictitious bodies corporate);
SUNRISE SENIOR LIVING, INC.; MULTIPLAN, INC.;
SUNRISE SENIOR LIVING LLC OPEN ACCESS
PLUS MEDICAL BENEFITS GOLD PLAN
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 3-17-cv-02055)
District Judge:  Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 16, 2024

Before:  JORDAN, BIBAS, and AMBRO, *Circuit Judges*

(Filed: April 26, 2024)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

The Plastic Surgery Center, P.A. ("TPSC") wants compensatory damages from Multiplan, Inc. ("Multiplan") for an alleged breach of contract. TPSC argues that Multiplan wrongly allowed Cigna Health and Life Insurance Company ("Cigna") to underpay for medical services that TPSC provided to K.D., one of Cigna's beneficiaries. If that already sounds complicated, it's because it is. The key to the present dispute, however, is straightforward. While TPSC believed that its contract with Multiplan guaranteed a set payment rate for services rendered to insurance plan beneficiaries, the plain language of the agreement contains no such promise. Furthermore, Cigna and TPSC do not have a contractual relationship; only Cigna and Multiplan and, separately, Multiplan and TPSC do. Therefore, in essence, TPSC asserts a claim against Multiplan based on Cigna's actions and, for that reason, the District Court held that TPSC failed to state a contract claim. We agree and will affirm.

## I. BACKGROUND

### A. Facts[1]

#### 1. The Multiplan Contract

This contract dispute centers on an agreement between TPSC and Multiplan (the "TPSC-Multiplan Contract") involving something called the Multiplan Network.[2] At a

---

[1] The following facts are taken from TPSC's proposed Fourth Amended Complaint. Because we write primarily for the parties, and because the District Court has set forth the factual and procedural history of this case, we do not repeat that history here in its entirety.

[2] TPSC originally contracted with Beech Street, which Multiplan acquired in March 2010. For clarity, we will refer throughout this opinion to Multiplan, not Beech

high level, the Multiplan Network is a group of medical providers ("Providers") seeking payment for medical services from "Payors," which are primarily insurance companies. The Payors buy medical services on behalf of their insurance plan beneficiaries ("Eligible Persons"). When such Eligible Persons receive medically necessary services from Providers, the "Covered Services" may be paid by Payors to Providers at a discounted rate set under each Provider's contract with Multiplan. Multiplan contracts individually with each Provider and each Payor regarding their access to services within the network.

TPSC is a licensed medical practice in New Jersey that specializes in plastic and reconstructive surgery. TPSC contracted with Multiplan to become a "Provider" in its "networks of health care providers for purchasers of health care services[.]" (App. at 57.) According to TPSC, as a Provider under the TPSC-Multiplan Contract, it must be reimbursed for 85% of the charges – less any applicable co-payments, deductibles, and co-insurance – (the "Multiplan Rate") that it bills to "Payors," or "the parties responsible for the payment" of services under the contract. (App. at 57.)

Cigna also contracted with Multiplan to "utilize the Multiplan Network for the benefit of members, participants, beneficiaries, or insureds under policies or benefit plans administered by Cigna" (the "Cigna-Multiplan Agreement").[3] (App. at 11.) As TPSC

Street.

[3] The Cigna-Multiplan Agreement is not in the record, nor are any claims against Cigna before us.

3

sees things, when it serves a Cigna-covered patient and Cigna fails to pay the Multiplan Rate to TPSC, Multiplan must pay the difference.

More specifically, TPSC relies on Section 4.2 of the TPSC-Multiplan Contract, which provides, in relevant part: "Payment for Covered Services under this Agreement is the sole responsibility of the Payor and shall be the lesser of Provider's usual billed charges or the reimbursement amount provided in Exhibit A[.]" (App. at 59.) Exhibit A, attached to the agreement, states that "Covered Services will be reimbursed at 85% of usual billed charges, less applicable Copayments, Deductibles and Coinsurance." (App. at 65; *see also* App. at 53 (Contract Update) ("Reimbursement fees. … [TPSC] will be reimbursed under [the Contract] for services provided to members …, which is equal to eighty-five (85%) percent of your billed charges[.]").) The contract thus sets forth a discount rate (85%) at which a Payor may reimburse Covered Services, defined as "health care services provided pursuant to a Plan." (App. at 57.)

The contract, of course, has other pertinent provisions. Section 2.3 of the TPSC-Multiplan Contract, headed "Liability for Claims Decisions," provides:

> Payors shall be liable for … the payment of Payors' portions of claims … . [Multiplan] is not a Payor and shall not be responsible or liable for any claims decisions or for the payment of any claims submitted by Provider for furnishing Covered Services or non-Covered Services to Eligible Persons. [Multiplan] shall not be an insurer, guarantor or underwriter of the responsibility or liability of any Payor or any other party to provide benefits pursuant to any Plan.

(App. at 58.) And, Section 4.4, "Limitation on Billing Eligible Persons[,]" confirms that "in no event … shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from … persons other than the applicable Payor for

4

Covered Services." (App. at 59.) The parties do not dispute that Cigna falls within the definition of a Payor under the TPSC-Multiplan Contract. Nor do they dispute that Multiplan does not. (App. at 58 ("[Multiplan] is not a Payor[.]").)

Moreover, Section 2.1 provides that Multiplan's obligation under the Contract is to "use reasonable efforts to market … and to solicit Network Access Agreements." (App. at 58.) Section 3.3, titled "Participation in [Multiplan] Networks[,]" expands on this and explicitly provides that, by participating, "Provider understands and acknowledges that … depending on the applicable Plan, Covered Services *may* be covered under the Eligible Person's in-network or out-of-network benefit." (App. at 59 (emphasis added).) Furthermore, Section 8.4, "Entire Agreement/Applicability of Agreement[,]" states:

> Notwithstanding anything to the contrary set forth in this Agreement, the applicability of this Agreement to an Eligible Person is subject to the terms of the applicable Network Access Agreement and Plan. For example, if the applicable Network Access Agreement does not include access to this Agreement for primary network services and Provider participates in the Payor's primary network applicable to the Eligible Person, *that network contract will apply to Covered Services rendered to that Eligible Person and will supersede this Agreement.*

(App. at 62 (emphasis added).)

With this contractual backdrop, we turn to the allegedly underpaid medical bill.

### 2. *The Disputed Payment*

In 2015, TPSC rendered breast reconstruction surgery to K.D., a participant and beneficiary of an employee health benefit plan (the "Plan") sponsored by her employer,

5

Sunrise Senior Living ("Sunrise"), and administered by Cigna.[4] K.D. assigned her rights under the Plan to TPSC. TPSC in turn billed $184,962 to Cigna for K.D.'s medically necessary services, but Cigna – on behalf of Sunrise – paid TPSC only $1,975.04, instead of $157,217.70, which equates to 85% of the billed services. TPSC thus alleges that Multiplan owes them the remaining $155,242.66.

## B.    Procedural History

After exhausting all requisite claim appeal procedures and administrative proceedings under the Plan, TPSC filed suit against Cigna.[5] The District Court dismissed three counts of TPSC's Second Amended Complaint and granted it leave to file a third amended complaint to add Multiplan as a defendant. In 2018, TPSC filed the Third Amended Complaint ("TAC").[6] Defendants moved for dismissal, and TPSC cross-

---

[4] As a Plan participant, Cigna issued K.D. an identification card bearing Multiplan's logo, indicating that Cigna participated in the Multiplan Network and that K.D. was authorized to be treated by providers in the Network. TPSC alleges that it relied upon the Multiplan logo on the card in deciding whether to perform medical services.

[5] TPSC originally filed suit in the Superior Court of New Jersey, asserting breach of contract claims. Cigna removed the case to federal court on the basis of ERISA preemption, pursuant to 28 U.S.C. §§ 1441 and 1446. In the District Court, TPSC filed an amended complaint, asserting a single claim against Cigna – wrongful denial of benefits under ERISA. TPSC then filed a second amended complaint, adding Sunrise as a defendant and asserting the following five causes of action: (1) breach of contract against Cigna; (2) negligent misrepresentation against Cigna; (3) wrongful denial of benefits under § 502(a)(1)(B) of ERISA against Cigna and Sunrise; (4) violation of § 502(c)(1) of ERISA, on the basis of Cigna and Sunrise's alleged failure to respond to TPSC's request for Plan documents within 30 days; and (5) breach of fiduciary duty, pursuant to § 502(a)(3) of ERISA, against Cigna and Sunrise.

[6] TPSC's third amended complaint, in which TPSC added Multiplan as a defendant, asserted the following causes of action: (1) breach of contract against Cigna;

6

moved to file a Fourth Amended Complaint ("FAC") alleging six counts, two of which were against Multiplan. The FAC alleged the following causes of action: (1) wrongful denial of benefits under § 502(a)(1)(B) of ERISA against Cigna, Sunrise, and the Plan; (2) breach of contract against Cigna; (3) breach of implied-in-fact contract against Cigna; (4) breach of contract against Multiplan; (5) violation of TPSC's third party beneficiary rights pursuant to the Cigna-Multiplan Agreement; and (6) unjust enrichment against Multiplan and Cigna. Relevant here is TPSC's fourth claim, a breach of contract claim against Multiplan predicated on Cigna's failure to pay 85% of the K.D.-related billed charges under the TPSC-Multiplan Contract.

The District Court granted Multiplan's motion to dismiss the TAC and denied TPSC's motion to file the proposed FAC for Counts Three through Six because only the Payor is liable under the Contract for payment for medical services and TPSC cannot contractually recover from Multiplan for Cigna's alleged underpayment. Accordingly, only TPSC's claims against Cigna and Sunrise for wrongful denial of benefits, and a breach of contract claim against Cigna, remained. Later, the Court dismissed the claims against Cigna and granted summary judgment against TPSC on its benefits reimbursement claim.[7]

---

(2) ERISA claim for benefits against Cigna and Sunrise; (3) breach of contract against Multiplan.

[7] The District Court held that Cigna's reimbursement determination for K.D. was not arbitrary and capricious and, thus, that there was "no genuine dispute of fact that [TPSC wa]s not entitled to any further reimbursement under the terms of the Plan." (App. at 5.)

7

TPSC timely appealed the District Court's dismissal of the breach of contract claim against Multiplan (Count III), as set forth in the TAC, and the denial of TPSC's motion for leave to file Count IV of the FAC, which again is the breach of contract claim against Multiplan.

## II.    DISCUSSION[8]

We begin by noting what is not before us.  No claims against Cigna or Sunrise have been appealed, and the District Court dismissed or granted summary judgment on all such claims.  Therefore, the obligations of Cigna and Sunrise, if any, play no part in our analysis.  Nor is a third-party beneficiary claim before us; the Court dismissed TPSC's claim that it was a beneficiary of the Cigna-Multiplan Agreement, and that decision was not appealed.  TPSC does not assert a guarantor claim against Multiplan here, and the contract explicitly refutes that possibility, as we will discuss.

Instead, TPSC presses only that Multiplan promised, under the TPSC-Multiplan Contract, that Payors (here, Cigna) would pay TPSC 85% of billed charges for covered medical services, and that Cigna's underpayment resulted in a "failure of consideration

---

[8] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We exercise plenary review over the dismissal of a complaint under Federal Rule [of Civil Procedure] 12(b)(6)."  *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 219 (3d Cir. 2020).  Denial of leave to amend because of "futility is governed by the same standard[.]"  *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (brackets omitted).  When conducting our review, we "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).  All "well-pleaded allegations" must be accepted as true and construed "in the light most favorable to the plaintiffs[.]"  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

8

for which TPSC has bargained and constitutes a breach of the Multiplan Contract."

(Opening Br. at 15.)  Under that theory, TPSC seeks compensatory damages from

Multiplan "equal [to] the delta between what Cigna paid to TPSC and 85% of TPSC's

billed charges[,]" or $155,242.66.  (Opening Br. at 15.)

TPSC contends that the District Court wrongly interpreted its claim as seeking to

hold Multiplan liable as a "Payor" for medical services, rather than for breach of contract

to recover damages.[9]  (Opening Br. at 15.)  Multiplan responds that the Contract does not

contain any provisions that guarantee Multiplan will reimburse providers for medical

services, nor any guarantees that Multiplan will "force payors to access the agreement

and reimburse TPSC, in any amount."  (Answering Br. at 3.)  Thus, says Multiplan, there

was no breach of the TPSC-Multiplan Contract.

We agree with Multiplan.  Nowhere in the TPSC-Multiplan Contract is there a

guarantee of anything by Multiplan other than potential access to Payors within the

Multiplan Network.

---

[9] Before the District Court, Multiplan opposed TPSC's cross motion for leave to file the proposed FAC on the same bases as its motion to dismiss the TAC.  Accordingly, the Court used the allegations in the proposed FAC for the purpose of resolving the motion.  We will do the same.

Additionally, because the TPSC-Multiplan Contract was relied upon in TPSC's FAC, we will, as the District Court did, consider it in our analysis.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002*)* ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."); *see also Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (holding that if attached "exhibits contradict [the] allegations in the complaint, the exhibit controls").

9

Under New Jersey law,[10] "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). In so determining, "[w]e interpret a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (citing *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1168-69 (N.J. 2009)).

As a reminder, Section 4.2 of the contract provides, in relevant part, "Payment for Covered Services under this [Contract] is the sole responsibility of the Payor and shall be the lesser of Provider's usual billed charges or the reimbursement amount provided in Exhibit A[.]" (App. at 59.) Exhibit A to the contract states that "Covered Services will be reimbursed at 85% of usual billed charges, less applicable Copayments, Deductibles and Coinsurance." (App. at 65; *see also* App. at 53 (Contract Update) ("Reimbursement fees. … [TPSC] will be reimbursed under [the Contract] for services provided to members …, which is equal to eighty-five (85%) percent of your billed charges[.]").) The contract thus sets forth a discount rate (85%) at which a Payor, and *only* a Payor,

---

[10] Section 8.11, "Governing Law[,]" states: "This Agreement shall be interpreted and enforced in accordance with the internal laws of the state in which Provider is located[.]" (App. at 63.) TPSC is a New Jersey professional corporation with its principal place of business in New Jersey, so we apply New Jersey law.

such as Cigna, is required to reimburse "health care services provided pursuant to a Plan." (App. at 57.) Section 4.2 does not mention Multiplan, nor does it include a guarantee that TPSC will always receive 85% of billed charges.

Contrary to TPSC's claims, Section 2.1, "Marketing and Promotion[,]" provides Multiplan's obligation under the TPSC-Multiplan Contract: Multiplan "shall use reasonable efforts to market … and to solicit Network Access Agreements. [Multiplan] may allow Payors to access Provider services under this Agreement for those Plans included within the scope of this Agreement." (App. at 58.) There is no allegation in the TAC or the proposed FAC that Multiplan failed to do so. In fact, Multiplan did exactly as it promised: it marketed TPSC and allowed Payors access to the Network for certain Covered Services at a specified rate, and it did not require them to access the Network for all such services. (Opening Br. at 24 ("Multiplan markets its network to Payors as including TPSC as a provider … [and] enter[ed] into agreements with Payors like the one that it has with Cigna.").)

Additionally, even if we construed TPSC's claim as it wishes, no provision in its contract with Multiplan guarantees that TPSC will recover 85% of the billed charges for all provided medical services. To the contrary, Section 3.3, "Participation in [Multiplan] Networks[,]" explicitly provides that, by participating, "Provider understands and acknowledges that … depending on the applicable Plan, Covered Services *may* be covered under the Eligible Person's in-network or out-of-network benefit." (App. at 59 (emphasis added).) In the end, Multiplan gives TPSC access to a network of providers

11

who may, but only just *may*, pay the Multiplan rate. Nothing more was agreed upon in that respect.[11]

The outcome here may certainly seem unfair, and one might wonder whether TPSC understood just how little backing they were going to get from Multiplan. But the agreement is an arms-length commercial transaction between sophisticated parties, and "contracting part[ies] ha[ve] the duty to learn and know the contents of a contract before [they] sign[] and deliver[] it." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) (internal quotation marks omitted); *see also MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) ("It is the general rule that where a party affixes [her] signature to a written instrument, … a conclusive presumption arises that [she] read, understood and assented to its terms and [she] will not be heard to complain that [she] did not comprehend the effect of [her] act in signing." (quoting *Peter W. Kero, Inc. v. Terminal Const. Corp.*, 78 A.2d 814, 817 (N.J. 1951) (alterations in original))).

Thus, we agree with the District Court that TPSC failed to plausibly state a claim for breach of contract.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order dismissing Count III of the TAC and denying leave to file Count IV of the proposed FAC.

---

[11] While TPSC could have perhaps pled an illusory contract claim, none was pled at the District Court and therefore no such claim is before us.

12